# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-23148-CV-WILLIAMS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

PHILIP ESFORMES,

     Defendant.

_____/

# EMERGENCY MOTION TO DISSOLVE
# OR MODIFY TEMPORARY RESTRAINING ORDER[1]

Adirhu Associates LLC; ADME Investment Partners LTD d/b/a Oceanside Extended Care; ALF Holdings Inc.; Almovea Associates LLC d/b/a North Dade Nursing and Rehabilitation Center; Ayintove Associates LLC d/b/a Harmony Health Center; Courtyard Manor Retirement Investors Ltd.; Courtyard Manor Retirement Living, Inc.; Fair Havens Center, LLC; Eden Gardens LLC; Flamingo Park Manor LLC d/b/a The Pointe; Jene's Retirement Living, Inc. d/b/a North Miami Retirement Living; Kabirhu Associates LLC d/b/a Golden Glades Nursing and Rehabilitation Center; La Hacienda Gardens LLC; Lake Erswin LLC d/b/a South Hialeah Manor; Lauderhill Manor LLC; Morsey LC; The Pointe Retirement Investors Ltd.; Rainbow Retirement Investors Ltd.; Jene's Retirement Investors Ltd.; Sefardik Associates, LLC d/b/a The Nursing

---

[1] In satisfaction of Local Rule 7.1(d), this Motion, and the underlying Emergency Motion to Modify Temporary Restraining Order are bona fide emergency matters for the Court's most expedited attention. As set forth more fully herein, the urgency here does not by any means arise from any dilatory conduct by the movants or their attorneys, but rather from actual concerns over life and safety of hundreds of frail, elderly residents of the facilities whose money is in the respective facility resident trust fund bank accounts that have been frozen.

Center at Mercy; Sierra ALF Management LLC; and Takifhu Associates LLC d/b/a South Dade Nursing and Rehabilitation Center ("Operators")[2,3], through their counsel and pursuant to Fed. R. Civ. P. 65(b)(4), hereby submit this Motion to Dissolve or Modify the Temporary Restraining Order entered on the e*x parte* motion of the government. Operators further request the Court to set a hearing on this matter on an emergency basis, as soon as may be possible. In support, Operators state:

## BACKGROUND

On July 20, 2016, the United States of America filed, under seal, an *Ex Parte* Complaint for Temporary Restraining Order and Preliminary and Permanent Injunction ("Complaint"), and an Emergency *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction pursuant to 18 U.S.C. § 1345 ("Motion"). The Government alleged that the Defendant, Philip

---

[2] ADME, Sefardik, Ayintove, Fair Havens, Kabirhu, Almovea and Takifhu own and operate skilled nursing facilities ("SNFs"). Courtyard Manor, Flamingo Park, La Hacienda, Lake Erswin, Lauderhill Manor, Eden Gardens, and Jene's Retirement own and operate assisted living facilities ("ALFs"). Morsey owns the real property for South Hialeah Manors/Lake Erswin. The Pointe Retirement Investors owns real property for Flamingo Park Manor. Rainbow Retirement Investors owns the real property for La Serena/La Hacienda. Courtyard Manor Retirement Investors and Jene's Retirement Investors own the real property of their same-named facilities, respectively. Adirhu Associates LLC is a management company which does not operate any ALF or other facility but does books for some of the SNFs. ALF Holdings, Inc. manages the ALFs. Sierra ALF Management LLC manages La Hacienda.

[3] There are five entities which are identified as ALFs in the pleadings filed in this case **which do not operate an ALF or any other facility which is affiliated with Philip Esformes.** These are: (a) Adar Associates is the owner of the land and building where Eden Gardens LLC operates an ALF; (b) DVAR Tove LLC is a company which serves only as a manager of limited liability companies and has no other operations and no employees; (c) Adirhu Associates LLC is a management company which does not operate any ALF or other facility but does books for some of the SNFs; (d) La Covadonda Retirement Living LLC previously operated an ALF, but the facility was sold more than 7 years ago; and (e) Williamsburg Retirement Living previously operated an ALF, but the facility was sold more than 10 years ago. (Benigo ¶ 3)

2

Esformes ("Esformes"), had "defrauded Medicare and Medicaid by paying kickbacks to health care professionals for the referral of patients to skilled nursing facilities ('SNFs') he allegedly controls, and receiving kickbacks to make such patients available to other providers that sought to provide services to, and bill for, those patients." Motion p. 2.

The Court granted the United States' *Ex Parte* Motion, and on July 22, 2016 at 10:39 a.m. issued a Temporary Restraining Order ("TRO"). The TRO enjoins Esformes and all others "from alienating, withdrawing, transferring, removing, dissipating, or otherwise disposing of, in any manner, any moneys or sums presently deposited, or held on behalf of the Defendant ... that are proceeds or profits from the Defendant's federal health care offenses ... including but not limited to" certain specified bank accounts. TRO ¶ 2.

With this motion, the Operators respectfully request that the Court modify the TRO to un-freeze 35 bank accounts that do not belong to Esformes, but to the Operators, and which are vital to maintain the operations of seven skilled nursing facilities and seven assisted living facilities (collectively "Facilities") where some 1,800 residents – many of whom are medically fragile – are now at risk for their safety if the Operators cannot continue to maintain services at the Facilities.

At present – as fully set forth in the Declarations of Jacob Benigo,[4] Chief Financial Officer for the seven SNFs, and Daniel Roth,[5] Director of Finance for the seven ALFs – all 14

---

[4] References to Benigo's Declaration herein are cited as (Benigo ¶ ##). The Benigo declaration is attached as Exhibit "A".

[5] References to Roth's Declaration herein are cited as (Roth ¶ ##). The Roth declaration is attached as Exhibit "B".

3

of these facilities are essentially unable to perform their vital functions. Whatever the ultimate resolution of the matters before this Court, or in the criminal case, whatever the ultimate fates of the Facilities, they have to be able to operate for the time being, or their residents are at tremendous risk.

A skilled nursing home or assisted living facility is a complete community made up of residents, care-givers, support staff and administrators. The residents in the former require care with many of their activities of daily living without which care they would suffer increased morbidity or possible death. The residents of the latter, although on average in need of less care than those in skilled nursing home not only have care provided pursuant to individualized care plans, but regard their assisted living facility as their home at which they have developed relationships with other residents as well as the staff providing them care and sustenance.   To meet the needs their residents, each of the facilities has to provide housing, nutrition, medical care, durable medical equipment, medications, nursing care, and necessary therapy consistent with each of those resident's care plans.  To accomplish that they employ every type of worker – from custodians, to food service workers, to registered nurses, consulting pharmacists, and physicians. The Facilities have to be able to buy food, keep the utilities running, pay vendors and pay all those vital employees. Even a single day of disruption in these services can result in harm to, or even the death of, residents.

## ARGUMENT

**1.     The TRO is Overbroad and Puts at Risk the Lives of Patients and Residents**

The nearly 200 bank accounts that have now been frozen pursuant to the Government's *Ex Parte* Motion encompass, *inter alia*, the bank accounts for seven skilled nursing facilities and

4

seven assisted living facilities still in operation (and other accounts related to the operation of the Facilities). Freezing these accounts puts at risk the lives and safety of thousands of residents -- many of whom are medically fragile – in fourteen skilled nursing and assisted-living facilities across South Florida. The funds contained in the frozen accounts are necessary to pay for the medications, food, utilities, and salaries of the hundreds of employees providing vital and necessary care to meet the needs of each facility resident according to his or her individualized care plan. Either an interruption or diminution in the amount or quality of the care on which those residents' lives depend, will create the potential for increased morbidity or even mortality of the residents in a matter of mere days.

The TRO also freezes assets in which the licensed Operators have substantial interests. This includes the operating and payroll accounts for, *inter alia*, skilled nursing facilities ADME Investment Partners LTD d/b/a Oceanside Extended Care; Almovea Associates LLC d/b/a North Dade Nursing and Rehabilitation Center; Ayintove Associates LLC d/b/a Harmony Health Center; Fair Havens Center LLC; Kabirhu Associates LLC d/b/a Golden Glades Nursing and Rehabilitation Center; Sefardik Associates, LLC d/b/a The Nursing Center at Mercy; and Takifhu Associates LLC d/b/a South Dade Nursing and Rehabilitation Center. (Roth ¶¶ 12, 13). Also frozen are operating and payroll accounts for assisted living facilities including, *inter alia*, Courtyard Manor Retirement Living, Inc.; Eden Gardens LLC; Flamingo Park Manor LLC d/b/a The Pointe; Lake Erswin LLC d/b/a South Hialeah Manor; Lauderhill Manor LLC; La Serena Retirement Living; and Jene's Retirement Living, Inc. (all ALFS); and four accounts of ALF Holdings (a management company). (Benigo ¶¶ 13, 14). In addition, other entities have unfairly had their accounts frozen. These include: the real property owners leasing to the ALF

5

operators: Morsey LC; The Pointe Retirement Investors Ltd.; Rainbow Retirement Investors Ltd.; Courtyard Manor Retirement Investors Ltd.; and Jene's Retirement Investors Ltd. (Benigo ¶ 22). Management companies for the ALFs and SNFs have had their accounts frozen, from which they pay consultants, accounting staff, and otherwise keep the Facilities running.

Importantly, with only the single exception (Lauderhill Manor where he owns a slight majority stake) Esformes or his trust is only a minority owner of the remaining 13 SNFs and ALFs. (Benigo ¶ 6; Roth ¶ 5). And Esformes is not a majority owner of any of the other eight Operators appearing as parties here.

The accounts Operators seek to have released are used to run and operate the facilities for the benefit of their residents; the facilities cannot operate without access to these funds. (Benigo ¶¶ 10, 12; Roth ¶¶ 9, 11) These facilities monthly spend between $46,000 and $135,000 (for the ALFs) and between $1,000,000 and $2,000,000 (for the SNFs) to operate. (Benigo ¶ 11; Roth ¶ 10, respectively)

All of these operations are employee-intensive and employees must be paid. For example, North Dade Nursing and Rehabilitation Center (Almovea Associates) has 268 employees caring for the residents, South Dade Nursing and Rehabilitation Center (Takifhu Associates) has 210 employees, and Golden Glades Nursing and Rehabilitation Center (Kabirhu Associates) has 234 employees, all with payroll due to be issued July 29, 2016. (Employees at all facilities are paid every two weeks. (Benigo ¶ 17; Roth ¶ 16) In all, the Facilities employ some 1,800 people. (Benigo ¶ 16; Roth ¶ 15)

If unpaid, those staff may very well cease working. And even if staff continues to work, with the freezes in place, they will have no supplies with which to work. (Benigo ¶ 34; Roth ¶

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

35) Disruption – or even cessation – of resident care would necessarily follow. And that disruption would have profoundly deleterious impacts on the residents – and on workers who would suddenly and without notice have no paycheck. (Benigo ¶¶ 20 – 21; Roth ¶¶ 19 – 20) Unpaid employees are likely not to continue to care for the residents. (Benigo ¶¶ 20, 24; Roth ¶¶ 19, 21) This disruption, or a sudden move to new facilities, could cause "transfer trauma" to many of the approximately 1,800 residents. (Benigo ¶¶ 26 – 30; Roth ¶¶ 24 – 26, 31)

Some of the frozen accounts are used to pay the property mortgages and other property-related expenses for the various facilities; others fund scores of vendors, utilities, outside contractors like pharmacists and all sorts of goods. (Benigo ¶ 31; Roth ¶ 32) If these accounts remain frozen, the various facilities may not be able to timely pay to maintain the operation of the facilities. (Benigo ¶ 32; Roth ¶ 33)

The TRO is also having a direct and unfair financial impact on the residents themselves. Under the regulations that control SNFs, each facility is required to hold personal funds of residents ("Resident Funds"). Resident Funds must be held in a separate account in the name of the SNF Facility. Resident Funds are owned by the residents and are not the property of the SNF Facility. Resident Funds are held by each SNF Facility for the exclusive use by each resident for any personal items he or she may want to purchase, such as beauty shop services, and any goods or services which are not provided by the SNF Facility as a part of its services. The Resident Funds accounts of the SNF Facilities were also frozen as a result of the Temporary Restraining Order. As a result, none of the SNF Facilities can provide residents with access to their own funds. (Roth ¶¶ 27 – 30)

7

What is more, so long as all of these accounts belonging to these entities are frozen, the entities are not even able to open new bank accounts to be able to operate in the meantime.

**2.      The Government Has Not Met its Burden**

To obtain the injunction it has requested pursuant to 18 U.S.C. § 1345, the Government is required to show that (a) Esformes is alienating or intending to alienate the property in the accounts and (b) that the property was obtained as a result of a federal health care offense, or is traceable to one. *United States v. Chang*, 937 F. Supp. 1186, 1194 (D. Md. 1996) ("All courts which have addressed the issue suggest that any assets to be frozen must in some way be traceable to the allegedly illicit activity.") The Government has not fulfilled its burden and has made no such showing with respect to many of the business accounts that were the subject of its broadly-drawn motion.

First, there has been no showing that Esformes owns or claims ownership of all the property in the Accounts. The Government's *Ex Parte* Motion also does not name a single corporate entity related to any of the ALFs/SNFs whose assets are identifiable property obtained as a result of Esformes' alleged health care fraud. Indeed, the Government's Motion makes clear that its position is that any asset that even *potentially* could be associated with Esformes should be frozen: "the United States seeks an injunction that encompasses all fraud perpetrated by the Defendant and those acting in concert and participation with him, irrespective of the specific corporate vehicle used for that purpose." Motion p. 13. To that end, the Government's Complaint merely lists every facility that Esformes "controls, owns, or operates" without any discernment among entities. Complaint ¶ 5. The only Esformes-related corporate entities separately identified

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

as actually participating in the alleged scheme to defraud are Harmony Health and Fair Haven. Complaint ¶¶ 58, 59. But this is not the proper standard.

**3.      The TRO Will Cause Immediate, Irreparable Harm to Residents of the Facilities**

The purpose of Section 1345 is to insure that the defendant is not wasting assets or attempting to hide them from the government, not to punish innocent third parties. *See United States v. Payment Processing Center, LLC.*, 435 F.Supp.2d 462, 466-67 (E.D. Pa. 2006); *United States v. Speqtrum, Inc.*, 2012 WL 517526 (D.D.C. 2012) ("It is not disputed here that the "purpose of freezing assets in this case is to preserve the status quo and prevent those assets from being dissipated or diverted during the pendency of the case.") The Court should weigh the equities and account for the harm that is almost certain to come to the individual residents of these facilities, who are innocent third parties.

The Government may argue that the freeze is required to maintain the status quo but that argument, if applicable at all, would apply to Esformes and not to the licensed Operators. Unless the TRO is modified, the continued freeze of these accounts will do substantial harm to the nursing home residents of the skilled nursing facilities and assisted living facilities, who cannot even access their own funds[6] and who may be displaced if these facilities are unable to continue operating, and to their employees, who may not be paid and may lose their employment. The Government's broad sweep in freezing any bank account having any possible relation or connection to Esformes has resulted in a TRO that is likely to cause significant collateral damage to innocent third parties.

---

[6] These funds were in Resident trust funds that the TRO also froze, as described above and at Roth ¶¶ 27 – 30.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

daily operations, which includes paying staff, paying mortgages, and caring for the many individuals who depend on the facilities for all of their needs.

WHEREFORE, and based upon the foregoing, the parties here appearing respectfully request the Court:

- To grant an Emergency Hearing as soon as possible;

- To modify the TRO to unfreeze the accounts appearing below, to release the funds therein for the purpose of Operators paying the necessary costs to maintain operations at the Facilities; and

- To grant such other and further relief as the Court deems just.

## ACCOUNTS TO BE RELEASED

| Facility Name | Bank | Last 4 Digits | Balance Per TRO |
|---|---|---|---|
| ADME Investment Partners LTD d/b/a Oceanside Extended Care | Bank of America Bank of America Bank of America | 3409 0551 2146 | $1,208,598 Not on list Not on list |
| Almovea Associates LLC d/b/a North Dade Nursing and Rehabilitation Center | Private Bank | 3948 | $ 738,233.91 |
| Ayintove Associates LLC d/b/a Harmony Health Center | Private Bank Bank of America Bank of America Bank of America | 4661 0859 7652 9055 | $    37,223.17 $    24,683.20 $    37,289.96 $        637.37 |
| Fair Havens Holding LLC/Fair Havens Center LLC | Bank of America | 7170 | $1,100,000.00 Not on list |
| Kabirhu Associates LLC d/b/a Golden Glades Nursing and Rehabilitation Center | Private Bank | 9777 | $845,587.77 |
| Sefardik Associates, LLC d/b/a The Nursing Center at Mercy | MB Financial | 1238 (should be 1283) | $433,355.40 |
| Takifhu Associates LLC d/b/a South Dade Nursing and Rehabilitation Center | Private Bank Private Bank | 9735 9793 | $420,536.70 $420,536.70 |
| Adirhu Associates LLC (management company for SNF Facilities) | Private Bank | 9785 | $  16,917.44 |

11

| Facility Name | Bank | Last 4 Digits | Balance Per TRO |
|---|---|---|---|
| Ayintove Associates LLC d/b/a Hamony Health Center (Resident Trust Funds) | Bank of America Bank of America Bank of America | 6361 8592 9068 | $61,107.46 $ 3,697.70 $ 2,377.43 |
| Courtyard Manor Retirement Living, Inc. | Private Bank | 8119 | $ 78,532.98 |
| Eden Gardens LLC | Private Bank | 4715 | $ 81,046.51 |
| Flamingo Park Manor LLC/The Pointe | Private Bank | 9116 | $ 35,659.95 |
| Lake Erswin LLC d/b/a South Hialeah Manor/Interamerican | Private Bank | 7138 | $ 44,807.64 |
| Lauderhill Manor LLC | Private Bank Private Bank | 3572 5066 | $ 60,954.49 $ 20,473.01 |
| La Serena Retirement Living LLC/La Hacienda Gardens/Rainbow/Sierra | Private Bank | 2310 | $ 30,134.27 |
| Jene's Retirement Living, Inc/Jene's Retirement Investors Ltd d/b/a North Miami Retirement Living | Private Bank | 5122 | $   3,891.90 |
| ALF Holdings, Inc. (management company) | Private Bank | 1804 | $ 12,881.46 |
| ALF Holdings, Inc. Special Account (management company) | Private Bank | 1947 | $ 38,564.70 |
| ALF Holdings, Inc. Operating Account (management company) | Private Bank | 6406 | $ 99,584.22 |
| ALF Holdings, Inc. Settlement Account (management company) | Private Bank | 2218 | $292,482.41 (not on list) |

| Entity | ALF Facility | Bank | Last 4 Digits | Amount |
|---|---|---|---|---|
| The Pointe Retirement Investors LTD | Flamingo Park | Optimum Bank | 2770 | $ 31,900.22 |
| Rainbow Retirement Investors LTD | La Hacienda (La Serena) | Optimum Bank | 2788 | $  6,522.17 |
| Morsey LC | South Hialeah | Optimum Bank | 2796 | $ 84,223.51 |
| Courtyard Manor Retirement Investors LTD | Courtyard Manor Retirement Living LLC | Optimum Bank | 2804 | $124,108.56 |
| Jenes Retirement Investors LTD | Jene's Retirement Living, Inc. | Optimum Bank | 3812 | $  1,665.56 |

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD  |  SUITE 1400  |  CORAL GABLES, FLORIDA 33134  |  P 305.374.8200  |  F 305.374.8208

## Certificate Pursuant to Local Rule 7.1(a)(3)

Undersigned counsel certifies that he has conferred with counsel for the Government and for Philip Esformes. Esformes has agreed to the relief sought herein. Government Counsel has indicated a willingness to engage in dialogue to attempt to come to an agreement as to some or all of the issues herein.

Dated this 25 day of July, 2016.

Respectfully submitted,

Guy A. Rasco, Esq.
Florida Bar No. 727520
grasco@devinegoodman.com
Robert J. Kuntz, Jr., Esq.
Florida Bar No. 94668
rkuntz@devinegoodman.com
Caitlin M. Clarke, Esq.
Florida Bar No. 106897
cclarke@devinegoodman.com
DEVINE GOODMAN RASCO
& WATTS-FITZGERALD, LLP
2800 Ponce de Leon Blvd., Suite 1400
Coral Gables, Florida 33134
Tel: (305) 374-8200
Fax: (305) 374-8208
*Counsel for Operators*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25 day of July, 2016, the foregoing document was electronically filed with the Clerk of Court by utilizing the CM/ECF System.  I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Guy A. Rasco

**Service List**

Susan Torres, Esq.
**Assistant United States Attorney**
Susan.torres@usdoj.gov
99 N.E. 4th Street, Third Floor
Miami, Florida 33132
Tel: (305) 961-9331
Fax: (305) 530-7139
*Counsel for United States of America*


Michael S. Pasano, Esq.
mpasano@carltonfields.com
Marrisel Descalzo, Esq.
mdescalzo@carltonfields.com
Carlton Fields
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, Florida  33131
Tel. (305) 530-0050
Fax: (305) 530-0055
*Counsel for Philip Esformes*

14

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23148-CIV-Williams

UNITED STATES OF AMERICA,    )
    )
            Plaintiff,    )
    )
   vs.    )
    )
PHILIP ESFORMES,    )
    )
          Defendant.    )
_____)

## DECLARATION OF JACOB BENGIO

### Background

1.    I am Jacob Bengio.

2.    I serve as the Chief Financial Officer for a group of seven assisted living facilities listed below:

    (1)    Courtyard Manor Retirement Living, Inc.

    (2)    Eden Gardens LLC

    (3)    Flamingo Park Manor LLC/The Pointe

    (4)    Lake Erswin LLC
           d/b/a South Hialeah Manor/Interamerican

    (5)    Lauderhill Manor LLC

    (6)    La Serena Retirement Living LLC/La Hacienda Gardens/Rainbow

    (7)    Jene's Retirement Living, Inc./Jene's Retirement Investors Ltd
           d/b/a North Miami Retirement Living

These facilities are referred to below as the "ALF Facility(ies)."

3.      There are five entities which are identified as ALFs in the pleadings filed in this case which do not operate an ALF or any other facility which is affiliated with Philip Esformes.  These are:

a.      Adar Associates is the owner of the land and building where Eden Gardens LLC operates an ALF.

b.      DVAR Tove LLC is a company which serves only as a manager of limited liability companies and has no other operations and no employees.

c.      Adirhu Associates LLC is a management company which does not operate any ALF or other facility.

d.      La Covadonda Retirement Living LLC previously operated an ALF, but the facility was sold more than 7 years ago.

e.      Williamsburg Retirement Living previously operated an ALF, but the facility was sold more than 10 years ago.

4.      As the Chief Financial Officer, I am generally in charge of all matters related to the financial operations of the ALF Facilities.  I am responsible for paying the payroll, paying all vendors, and preparing monthly financial statements.

5.      As the Chief Financial Officer, I am also familiar with the ownership arrangement for each of the ALF Facilities.

6.      Philip Esformes or his Trust owns a minority ownership interest in each of the ALF Facilities, except that Philip Esformes owns a slight majority of Lauderhill

Manor LLC. Except as noted above, neither Philip Esformes nor his Trust owns a majority interest in any of the ALF Facilities.

7.       Each of the ALF Facilities is duly licensed by the Florida Agency for Health Care Administration ("AHCA") as an assisted living facility licensed for the number of residents shown in paragraph 30 below. The license of each ALF Facility is in good standing.

8.       The ALF Facilities are not eligible for and are not certified for participation in the Medicare reimbursement program by the United States Department of Health and Human Services, Centers of Medicare and Medicaid Services ("CMS").

9.       Each of the ALF Facilities is duly certified by the Florida Agency for Health Care Administration to participate in the Florida Medicaid program.

## Dynamic Operations

10.      By its nature, an assisted living facility is a highly dynamic business from a financial standpoint. By that, I mean that revenue comes to each ALF Facility several times per month from different sources. These sources include reimbursement from residents, insurance carriers and/or family members. Also, several payments are made each month to a wide variety of payees. These include payments to employees for payroll, vendors for food, medicine, pharmacy vendors, goods and services for each ALF Facility, rent, utilities, and mortgage payments for where the Facility is owned.

11.      The total amount of payments to all employees and vendors for each ALF Facility during a single month on average is approximately from $46,000 to $135,000.

12.     Because funds are frequently received by and paid out by each ALF

Facility, each ALF Facility must have constant access to its operating accounts.

**Impact on Employees**

13.     The operating bank accounts of each of the ALF Facilities were frozen as a

result of a Temporary Restraining Order entered in this case on July 22, 2016.

14.     The following is a list of the bank accounts for the ALF Facilities which are

critical to their operation of the ALF Facilities.  The list identifies each ALF Facility, the

bank where the account is held, the last four digits of the bank account number and the

balance as shown in the Temporary Restraining Order:

| Facility Name | Bank | Last 4 Digits | Balance Per TRO |
|---|---|---|---|
| Courtyard Manor Retirement Living, Inc. | Private Bank | 8119 | $ 78,532.98 |
| Eden Gardens LLC | Private Bank | 4715 | $ 81,046.51 |
| Flamingo Park Manor LLC/The Pointe | Private Bank | 9116 | $ 35,659.95 |
| Lake Erswin LLC d/b/a South Hialeah Manor/Interamerican | Private Bank | 7138 | $ 44,807.64 |
| Lauderhill Manor LLC | Private Bank<br>Private Bank | 3572<br>5066 | $ 60,954.49<br>$ 20,473.01 |
| La Serena Retirement Living LLC/La Hacienda Gardens/Rainbow/Sierra | Private Bank | 2310 | $ 30,134.27 |
| Jene's Retirement Living, Inc/Jene's Retirement Investors Ltd d/b/a North Miami Retirement Living | Private Bank | 5122 | $   3,891.90 |

| Facility Name | Bank | Last 4 Digits | Balance Per TRO |
|---|---|---|---|
| ALF Holdings, Inc. (management company) | Private Bank | 1804 | $ 12,881.46 |
| ALF Holdings, Inc. Special Account (management company) | Private Bank | 1947 | $ 38,564.70 |
| ALF Holdings, Inc. Operating Account (management company) | Private Bank | 6406 | $ 99,584.22 |
| ALF Holdings, Inc. Settlement Account (management company) | Private Bank | 2218 | $292,482.41 (not on list) |

15.    As a result, each ALF Facility is unable to make any payment to any party.

16.    The total number of employees at the ALF Facilities is about 162.

17.    All ALF Facility employees are paid once every two weeks.

18.    In order for the ALF Facilities to make the next regularly scheduled payroll payment, they must make payroll deposits no later than July 27, 2016.

19.    If the operating accounts of the ALF Facilities remain frozen, the ALF Facilities will be unable to pay their employees.

20.    Employees of these ALF Facilities would likely be unable and unwilling to continue to work without pay.  For the most part, these employees rely on wages they earn from the ALF Facility as their primary source of livelihood.

21.    If the ALF Facilities are unable to make payroll deposits on or before July 27, 2016, the employees would suffer personal financial loss.  Many would be unable to make their own personal financial obligations such as payment for food, clothing, shelter, care for their children and other loved ones.

5

### Owners of ALF Land and Buildings

22.    In addition to the operating accounts mentioned above, accounts of entities

which own the land and building where five the ALF Facilities operate were frozen.

These are:

| Entity | ALF Facility | Bank | Last 4 Digits | Amount |
|---|---|---|---|---|
| The Pointe Retirement Investors LTD | Flamingo Park | Optimum Bank | 2770 | $ 31,900.22 |
| Rainbow Retirement Investors LTD | La Hacienda (La Serena) | Optimum Bank | 2788 | $  6,522.17 |
| Morsey LC | South Hialeah | Optimum Bank | 2796 | $ 84,223.51 |
| Courtyard Manor Retirement Investors LTD | Courtyard Manor Retirement Living LLC | Optimum Bank | 2804 | $124,108.56 |
| Jenes Retirement Investors, LTD | Jene's Retirement Living, Inc. | Optimum Bank | 3812 | $  1,665.56 |

23.    Freezing of the accounts of the owners of the land and building make it

impossible for those owners to make monthly mortgage payments to their lenders.  This

would likely result in foreclosure of the loans for these properties.

### Impact on Residents

24.    If the payroll deposits are not made on or before July 27, 2016, many of the

employees would likely not continue to work.  This condition would cause each of the

ALF Facilities to close.

25.    Closing of a ALF Facility would cause immediate and irreparable harm to

all residents.

26.     For the most part, the residents in each ALF Facility are frail, elderly patients and many have dementia conditions.

27.     Even in an orderly closing with substantial advance notice, residents who are frail and elderly would suffer from a condition known as transfer trauma.

28.     Transfer trauma is a widely recognized medical condition of residents of long term care facilities.  Residents who transfer from one facility to another suffer both physical and psychological trauma as a result of being moved from one facility where they know the staff, surroundings, fellow residents and routine and move to a completely new environment.

29.     Closure of an ALF Facility as a result of a financial crisis arising from nonpayment of employees would be more likely to cause substantial transfer trauma than a transfer following substantial advance notice.

30.     The number of residents in the ALF Facilities as of July 22, 2016, was:

| ALF FACILITY | RESIDENT CENSUS 7/22/16 | LICENSED BEDS |
|---|---|---|
| Courtyard Manor Retirement Living, Inc. | 75 | 86 |
| Eden Gardens LLC | 117 | 118 |
| Flamingo Park Manor LLC/The Pointe | 56 | 72 |
| Lake Erswin LLC d/b/a South Hialeah Manor/Interamerican | 64 | 72 |
| Lauderhill Manor LLC | 93 | 105 |
| La Serena Retirement Living LLC/La Hacienda Gardens/Rainbow | 43 | 48 |

| ALF FACILITY | RESIDENT CENSUS 7/22/16 | LICENSED BEDS |
|---|---|---|
| Jene's Retirement Living, Inc./Jene's Retirement Investors Ltd d/b/a North Miami Retirement Living | 50 | 50 |
| **TOTAL** | 498 | 551 |

**Impact on Vendors**

31.     Each month, each ALF Facility makes payments to a wide variety of vendors in addition to paying its payroll.  These include vendors for medical supplies, health care supplies, food, utilities, rent and mortgage payments, payments to independent contractors such as advisors for services related to pharmacy goods and services and the like.

32.     As long as the operating accounts remain frozen, each ALF Facility will be unable to make payment to any of its vendors.

33.     Failure to pay a mortgage payment could result in a foreclosure by the lender.  Failure to pay the rent could result in termination of a lease.  Failure to pay for food, medicine and other essential supplies could cause the vendors to discontinue services.

34.     Even if the employees would continue to work, each ALF Facility would be unable to continue to operate if vendors would discontinue delivery of their goods and services.

35.     Discontinuation of goods and services by vendors would also cause each ALF Facility to close.

## Financial Impact of Closure of ALF Facilities

36.     Each ALF Facility is constructed as a single purpose building.  Each one is designed to be used exclusively as a long term care facility.

37.     If a ALF Facility would discontinue operation as an ongoing business, the value of the building would be significantly reduced.

38.     If the operation of the ALF Facilities would discontinue, the value of the assets of the ALF Facilities would be significantly reduced.  This would not be in the best interests of the government or the owners of the ALF Facilities regardless of the outcome of the criminal case.  Second, the value of the closed facilities would be substantially less than those of going concern businesses.

FURTHER DECLARANT SAYETH NAUGHT.

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based upon my personal knowledge this  25th  day of July, 2016, in _____ Miami , FL.

JACOB BENGIO
CHIEF FINANCIAL OFFICER

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23148-CIV-Williams

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
                                    )
        vs.                         )
                                    )
PHILIP ESFORMES,                    )
                                    )
                    Defendant.      )
_____ )

## DECLARATION OF DANIEL ROTH

### Background

1.    I am Daniel Roth.

2.    I serve as the Director of Finance for a group of seven skilled nursing

facilities listed below:

(1)   ADME Investment Partners LTD
      d/b/a Oceanside Extended Care

(2)   Almovea Associates LLC
      d/b/a North Dade Nursing and Rehabilitation Center

(3)   Ayintove Associates LLC
      d/b/a Harmony Health Center

(4)   Fair Havens Holding LLC/[1]
      Fair Havens Center LLC

_____

[1] Fair Havens Holding LLC operates both a skilled nursing facility and an assisted living facility at the same location.

(5)     Kabirhu Associates LLC
         d/b/a Golden Glades Nursing and Rehabilitation Center

(6)     Sefardik Associates, LLC
         d/b/a The Nursing Center at Mercy

(7)     Takifhu Associates LLC
         d/b/a South Dade Nursing and Rehabilitation Center

These facilities are referred to below as the "SNF Facility(ies)."

3.      As the Director of Finance, I am generally in charge of all matters related to the financial operations of the SNF Facilities.  I am responsible for paying the payroll, paying all vendors, and assist in the preparation of monthly financial statements.

4.      As the Director of Finance, I am also familiar with the ownership arrangement for each of the SNF Facilities.

5.      Philip Esformes or his Trust owns a minority ownership interest in each of the SNF Facilities.  Neither Philip Esformes nor his Trust owns a majority interest in any of the SNF Facilities.

6.      Each of the SNF Facilities is duly licensed by the Florida Agency for Health Care Administration ("AHCA") as a skilled nursing facility licensed for the number of residents shown in paragraph 31 below.  The license of each SNF Facility is in good standing.

7.      Each of the SNF Facilities is duly certified for participation in the Medicare reimbursement program by the United States Department of Health and Human Services, Centers of Medicare and Medicaid Services ("CMS") which authorizes it to participate in the Medicare reimbursement program.

8.      Each of the SNF Facilities is also duly certified by the Florida Agency for Health Care Administration to participate in the Florida Medicaid program.

## Dynamic Operations

9.      By its nature, a skilled nursing facility is a highly dynamic business from a financial standpoint.  By that, I mean that revenue comes to each SNF Facility several times per month from different sources.  These sources include reimbursement from the Medicare program, reimbursement from the Medicaid program and payments for residents who are in a private-payment status.  Also, several payments are made each month to a wide variety of payees.  These include payments to employees for payroll, vendors for food, medicine, pharmacy vendors, goods and services for each SNF Facility, rent, utilities, and mortgage payments for where the Facility is owned.

10.     The total amount of payments to all employees and vendors for each SNF Facility during a single month on average is approximately from $1,100,000 to $2,000,000.

11.     Because funds are frequently received by and paid out by each SNF Facility, each SNF Facility must have constant access to its operating accounts.

## Impact on Employees

12.     The operating bank accounts of each of the SNF Facilities were frozen as a result of a Temporary Restraining Order entered in this case on July 22, 2016.

13.     The following is a list of the bank accounts for the SNF Facilities which are critical to their operation of the SNF Facilities.  The list identifies each SNF Facility, the

bank where the account is held, the last four digits of the bank account number and the

balance as shown in the Temporary Restraining Order:

| **Facility Name** | **Bank** | **Last 4 Digits** | **Balance Per TRO** |
|---|---|---|---|
| ADME Investment Partners LTD d/b/a Oceanside Extended Care | Bank of America Bank of America Bank of America | 3409 0551[2] 2146[2] | $1,208,598 Not on list Not on list |
| Almovea Associates LLC d/b/a North Dade Nursing and Rehabilitation Center | Private Bank | 3948 | $ 738,233.91 |
| Ayintove Associates LLC d/b/a Harmony Health Center | Private Bank Bank of America Bank of America Bank of America | 4661 0859 7652 9055 | $   37,223.17 $   24,683.20 $   37,289.96 $       637.37 |
| Fair Havens Holding LLC/Fair Havens Center LLC | Bank of America | 7170 | $1,100,000.00 Not on list |
| Kabirhu Associates LLC d/b/a Golden Glades Nursing and Rehabilitation Center | Private Bank | 9777 | $845,587.77 |
| Sefardik Associates, LLC d/b/a The Nursing Center at Mercy | MB Financial | 1238 (should be 1283) | $433,355.40 |
| Takifhu Associates LLC d/b/a South Dade Nursing and Rehabilitation Center | Private Bank Private Bank | 9735 9793 | $420,536.70 $420,536.70 |
| Adirhu Associates LLC (management company for SNF Facilities) | Private Bank | 9785 | $  16,917.44 |

---

[2] These are resident trust fund accounts.

14.     As a result, each SNF Facility is unable to make any payment to any party.

15.     The total number of employees at the SNF Facilities is about 1,700.

16.     All SNF Facility employees are paid once every two weeks.

17.     In order for the next regularly scheduled payroll to be made, the SNF Facilities must make payroll deposits not later than July 26, 2016 for four SNF Facilities and not later than July 27, 2016 for the remaining three SNF Facilities.

18.     If the operating accounts of the SNF Facilities remain frozen, the SNF Facilities will be unable to pay their employees.

19.     Employees of these SNF Facilities would likely be unable and unwilling to continue to work without pay.  For the most part, these employees rely on wages they earn from the SNF Facility as their primary source of livelihood.

20.     If the SNF Facilities are unable to make payroll deposits on or before July 27, 2016, the employees would suffer personal financial loss.  Many would be unable to make their own personal financial obligations such as payment for food, clothing, shelter, care for their children and other loved ones.

### Impact on Residents

21.     If the payroll deposits are not made on or before July 27, 2016, many of the employees would likely not continue to work.  This condition would cause each of the SNF Facilities to close.

22.     Closing of a SNF Facility would cause immediate and irreparable harm to all residents.

23.     For the most part, the residents in each SNF Facility are frail, elderly patients and many have dementia conditions.

24.     Even in an orderly closing with substantial advance notice, residents who are frail and elderly would suffer from a condition known as transfer trauma.

25.     Transfer trauma is a widely recognized medical condition of residents of long term care facilities.  Residents who transfer from one facility to another suffer both physical and psychological trauma as a result of being moved from one facility where they know the staff, surroundings, fellow residents and routine and move to a completely new environment.

26.     Closure of a SNF Facility as a result of a financial crisis arising from nonpayment of employees would be more likely to cause substantial transfer trauma than a transfer following substantial advance notice.

27.     Under regulations of CMS and AHCA, each SNF Facility is required to hold personal funds of residents ("Resident Funds").  Resident funds must be held in a separate account in the name of the SNF Facility.  Resident funds are owned by the residents and are not the property of the SNF Facility.

28.     Resident Funds are held by each SNF Facility for the exclusive use by each resident for any personal items he or she may want to purchase, such as beauty shop services, and any goods or services which are not provided by the SNF Facility as a part of its services.

29.    The Resident Funds accounts of the SNF Facilities were also frozen as a result of the Temporary Restraining Order.  As a result, none of the SNF Facilities can provide residents with access to their own funds.

30.    Frozen Trust Funds are held in the following accounts at Bank of America for Ayintove Associates LLC d/b/a Hamony Health Center:

| No. | Amount |
|-----|--------|
| 6361 | $61,107.46 |
| 8592 | $ 3,697.70 |
| 9068 | $ 2,477.43 |

31.    The number of residents in the SNF Facilities as of July 22, 2016, was:

| SNF FACILITY | RESIDENT CENSUS 7/22/16 | LICENSED BEDS |
|--------------|-------------------------|---------------|
| ADME Investment Partners LTD d/b/a Oceanside Extended Care | 196 | 196 |
| Almovea Associates LLC d/b/a North Dade Nursing and Rehabilitation Center | 222 | 245 |
| Ayintove Associates LLC d/b/a Harmony Health Center | 202 | 203 |
| Fair Havens Holding LLC/Fair Havens Center LLC | 265 | 269 |
| Kabirhu Associates LLC d/b/a Golden Glades Nursing and Rehabilitation Center | 178 | 180 |
| Sefardik Associates LLC d/b/a The Nursing Center at Mercy | 114 | 120 |

| Takifhu Associates LLC d/b/a South Dade Nursing and Rehabilitation Center | 173 | 180 |
|---|---|---|
| **TOTAL** | 1,350 | 1,393 |

## Impact on Vendors

32.    Each month, each SNF Facility makes payments to a wide variety of vendors in addition to paying its payroll.  These include vendors for medications, health care supplies, food, utilities, rent and mortgage payments, payments to independent contractors such as advisors for services related to pharmacy goods and services and the like.

33.    As long as the operating accounts remain frozen, each SNF Facility will be unable to make payment to any of its vendors.

34.    Failure to pay a mortgage payment could result in a foreclosure by the lender.  Failure to pay the rent could result in termination of a lease.  Failure to pay for food, medicine and other essential supplies could cause the vendors to discontinue services.

35.    Even if the employees would continue to work, each SNF Facility would be unable to continue to operate if vendors would discontinue delivery of their goods and services.

36.    Discontinuation of goods and services by vendors would also cause each SNF Facility to close.

## Financial Impact of Closure of the SNF Facilities

37.     Each SNF Facility is constructed as a single purpose building.  Each one is designed to be used exclusively as a long term care facility.

38.     If a SNF Facility would discontinue operation as an ongoing business, the value of the building would be significantly reduced.

39.     If the operation of the SNF Facilities would discontinue, the value of the assets of the SNF Facilities would be significantly reduced.  This would not be in the best interests of the government or the owners of the SNF Facilities regardless of the outcome of the criminal case.  Second, the value of the closed facilities would be substantially less than those of going concern businesses.

FURTHER DECLARANT SAYETH NAUGHT.

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based upon my personal knowledge this __25__ day of July, 2016, in ___Miami___, FL.


DANIEL ROTH
DIRECTOR OF FINANCE