UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

Case No. 16-23148-CV-WILLIAMS

v.

PHILIP ESFORMES,

_____/

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE [DE89] TO DEFENDANT'S MOTION TO DISMISS [DE 83]

The primary issue before the Court on the merits[1] is whether the Federal Rules of Civil Procedure in general and Rule 9(b) in particular apply to cases brought by the government under 18 U.S.C. § 1345. Absent from the government's 18-page Response is any reference to the *actual statutory language* which, of course, includes the following directive from Congress: "*A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been*

---

[1] The government attempts to sidetrack the Court by beginning its Response with a belated procedural objection, claiming that Mr. Esformes' motion to dismiss was untimely. However, the government also begrudgingly concedes that a motion to dismiss for failure to state a claim "cannot be waived." DE 89 at 4. The government also ignored Mr. Esformes' argument that even if the time for filing a Rule 12(b)(6) motion has expired, the Court would still be required to reach the merits under Rule 12(c). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 125 (2d Cir. 2001) (collecting cases). Moreover, the government's "untimeliness" objection is itself untimely, as the government waived any such objection by failing to raise it when responding to Mr. Esformes' December 5, 2016 Hearing Memorandum [DE 72], in which the government also concedes Mr. Esformes first raised the Rule 9(b) defect. DE 89 at 4.

*returned against the respondent, <u>discovery</u> is governed by the Federal Rules of Criminal Procedure*." 18 U.S.C. § 1345(b) (emphasis added.)

There is nothing ambiguous about that language. Section 1345 does not relieve the government from complying with Rule 9(b). Thus, the government must resort to a plea that the Court, in effect, rewrite the statute to reach a result that the government prefers. The Court should not accept the government's invitation to legislate from the bench:

> Such judicial rewriting of [statutes] is improper. A court should presume [statutes] mean what they say. If the executive branch wishes to reconsider them, it is free to do so. Judicial assistance is not required.

*Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 433 (11th Cir. 1994). *See also United States v. Frazier*, 28 F.3d 99, 101 (11th Cir. 1994) (rejecting defendant's proposed construction of drug statute where that construction, "[r]ather than resting on the statute's clear language ... requires a judicial rewriting that we decline to undertake"); *Engine Mfrs. Ass'n, ex rel. Certain of its Members v. United States EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996) ("the court's role is not to 'correct' the text so that it better serves the statute's purposes, for it is the function of the political branches not only to define the goals but also to choose the means for reaching them"); *Rodriguez v. INS.*, 9 F.3d 408, 414 (5th Cir. 1993) ("it is the role of Congress, not of the courts, to rewrite the statute to correct ... problems") (citation omitted).

The proper methodology for courts interpreting a statute was recently summarized and applied by the Eleventh Circuit in *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483 (11th Cir. 2015):

> As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used. The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. The 'plain' in 'plain meaning' requires that *we look to the actual language used in a statute, not to the circumstances that gave rise to that language.* Where the language of a statute is unambiguous, as it is here, we need not, and ought not, consider legislative history.
>
> We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable; we must give effect to the text Congress enacted. As the Supreme Court has instructed "time and again," courts presume Congress "says in a statute what it means and means in a statute what it says there." When the statute's language is plain, the sole function of the courts – least where the disposition required by the text is not absurd – is to enforce it according to its terms.

785 F.3d at 487-88 (citations and quotation marks omitted) (italics in original). *See also United States v. Silva*, 443 F.3d 795 (11th Cir. 2006).

Adopting the positions advanced by the government in its Response cannot be squared with these principles. There is nothing "inescapably ambiguous" about the language in § 1345(b). To the contrary, Congress could not have been clearer: The Federal Rules of Criminal Procedure apply *only* to "discovery" issues, while other

-3-

issues are decided under the civil rules – all of them and not just the ones that government prefers depending on whose ox is being gored.

Nor is there anything "absurd" about the line drawn by Congress. Therefore, the Court should deny the government's wish for a result more friendly to its goals – a result that would require the Court to leap-frog the actual words used by Congress and rely instead on what the government claims is its legislative history, "policies behind the Rule," DE 89 at 3, 10,[2] or "the circumstances that gave rise to that language." *See also Stansell*, 704 F.3d at 915 ("Because the definition of 'blocked asset' is unambiguous, the statute's legislative history may not be used to create an ambiguity where none exists").

What the government seeks is also unprecedented, as the government has not cited a single case adopting its construction of the statute. Instead, the government nit-picks the court opinions that applied the statute's plain meaning. Below, we catalog the ways that the government would have the Court rewrite the statute.

---

[2] For example, the government apparently is contending that this Court should not apply Rule 9(b), because Mr. Esformes' "reputation" is so "tarnish[ed]" by the (unproved) criminal charges that his reputation could not possibly get any worse. DE 89 at 3, 10. Mr. Esformes, however, is presumed to be innocent of the criminal charges. The repugnant, *ad hominem* nature of the government's argument is too obvious to warrant further comment.

1.      *"Rule 9(b) Does Not Apply to All Claims for Injunctive Relief*'

The first statutory rewrite advanced by the government is for the Court to declare that because § 1345 provides for injunctive relief, the Federal Civil Rules of Procedure should not apply. DE 89 at 5-6. But Congress did not say that. Congress did not say that the civil rules apply "except" for "discovery" *and* "requests only for injunctive relief." Indeed, under that reading, the newfound exception would swallow the rule, as § 1345 is only about injunctive relief. Nor did Congress say: "A proceeding under this section is governed by the Federal Rules of Civil Procedure, *except for Rule 9(b)*." Yet, the government would have the Court insert that exception into the statute, as well. Rule (9)(b) states: "In pleading fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." There is no exception for injunctive relief. Nor does Rule 9(b) state: ".... a party, *except for the United States*, must state with particularity...." And, numerous courts have dismissed entire complaints, including the portions seeking injunctive relief, where the predicate averments of fraud were deficient. *See, e.g., SEC v. Radius Capital* Corp., 653 Fed. Appx. 744, 751 (11th Cir. 2016); *Windy City Metal Fabricator & Supply, Inc. v. CIT Technology Fin. Ser., Inc.*, 536 F.3d 663 (7th Cir. 2008); *Luce III v. Edelstein*, 802 F.3d 49 (2d Cir. 1986). As one court aptly put it, "[s]ince dismissal of Plaintiff's claim is warranted on the merits, he cannot establish any likelihood of success on the

merits." *Bennett v. JPMorgan Chase,* No. 3:12-CV-212-N, 2012 WL 2864751, at *5 (N.D. Tex. 2012) (citation omitted).

### 2.      *The Complaint Does Not Allege Fraud So Rule 9(b) Does Not Apply*

The government next floats the argument that the Complaint really only alleges "theft" and not "fraud" and, therefore, Rule 9(b) is inapplicable. DE 89 at 6-7. That argument essentially asks the Court to rewrite the government's Complaint, which stated: "Esformes used these facilities to carry out his *fraudulent* scheme....." DE 1 at 3 (emphasis added). And while the Court is at the drafting table, the government would also have the Court rewrite the following other allegations in the Complaint:

- ● CMS Form 855A contains additional certifications that the provider "will not knowingly present or cause to be presented a false *or fraudulent* claim for payment by Medicare...." DE 1 at 5 (emphasis added).

- ● The entire section with the heading announcing: **<u>DEFENDANT'S FRAUDULENT SCHEME</u>**. DE 1 at 6.

- ● "Esformes and his co-conspirators engaged in a *fraudulent* scheme to cycle the Esformes Benes through a network...." DE 1 at 6 (emphasis added).

- ● "The physicians were enticed into the *fraud* scheme...." DE 1 at 7 (emphasis added).

- ● "Financial analysis to date has revealed [that the] Esformes is significantly funded by his *fraudulent* Medicare business." DE 1 at 16 (emphasis added).

- "Among other things, the Defendant committed and is committing *health care fraud*...." DE 1 at 17 (emphasis added).

- "Defendant has already dissipated millions of dollars in proceeds of that *fraud*, and intends to continue dissipating the remainder of the proceeds of the *fraud*." DE 1 at 17 (emphasis added).

- "Defendant's *fraud* upon Medicare is a *fraud* against the United States...." DE 1 at 17 (emphasis added).

- "The United States brings this action to protect Medicare and other funds by restraining defendant's unlawful *fraudulent* conduct and to protect and restrain the transfer of funds and assets now in Defendant's hands as ill-gotten gains from his *fraud* upon the Medicare program." DE 1 at 17 (emphasis added).

- "....[T]he United States is entitled ... to a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining all future *fraudulent* conduct...."  DE 1 at 17-18 (emphasis added).

We frankly are mystified how the government could assert that the Complaint is based on "theft," not "fraud," when the Complaint is obviously replete with allegations of fraud and never once uses the words "theft," "steal" or "stolen."

Even apart from the continual use of the terms "fraud" and "fraudulent" to describe Mr. Esformes' conduct, the very essence of the allegations is fraud, not "theft" (although theft can be accomplished through fraud). For example, the Complaint repeatedly accuses Mr. Esformes of using "sham" contracts, billing for services not rendered or for unnecessary services, inflating invoices, and having a "corrupt" relationship to various entities. The only label such allegations have is

"fraud." Moreover, the government does not grasp how disclaiming fraud in one portion of its Response conflicts with its other arguments later, such as the government's (erroneous) claim that Mr. Esformes has adequate notice of the civil charges from the criminal Indictment, which, of course, charges him with fraud.

### 3.    *Mr. Esformes' Purported Notice From Other Sources*

Throughout its Response, the government claims that any defect in the Complaint should be ignored, because Mr. Esformes allegedly has been provided notice equivalent to the detail required by Rule 9(b) through other documents. But what other documents say is irrelevant. In determining a Rule 12(b)(6) motion to dismiss, the Court is limited to the four corners of a complaint unless the complaint explicitly incorporates by reference other documents. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1076 n. 9 (11th Cir. 2013) (citations omitted); *Allen v. Housing Auth. of City of Auburn*, 638 Fed. Appx. 825 (11th Cir. 2015) (per curiam); *Smart v. City of Miami Beach*, 1 F. Supp. 3d 1350 (S.D. Fla. 2014) (Williams, J.). Neither the agent's affidavit nor the indictments were incorporated or attached to the Complaint. Accordingly, it would be improper for the Court to consider them when deciding Mr. Esformes' motion.

Even if the Court could rely on these other documents, neither provides anything close to the requisite particularization. Indeed, the affidavit appears to be a

copy-and-paste of the Complaint (or vice versa), and the Second Superseding Indictment, like the original one, is nearly as vague.[3]

### 4.    Mr. Esformes Purported "Back-Door" Attack on the Indictment

As a radical extension of the latter argument, the government asserts that Mr. Esformes' challenge to the sufficiency of the civil Complaint is really "a back-door attack on the Indictment" and a "vehicle for challenging the indictment," which he is barred from doing by criminal precedent holding that defendants may not challenge the probable cause basis of criminal restraining orders. DE 89 at 3, 14-15 (citations omitted). The flaws in that convoluted argument are obvious. The civil Complaint was drafted and filed by the prosecutors without any use of a grand jury. This is a stand-alone civil proceeding, which is one of the reasons why the Court's ruling herein would not have double jeopardy consequences.  Moreover, the sufficiency of civil complaints under Rule 9(b) do not govern indictments, even fraud indictments. The government cites no authority for the sweeping proposition that "both the statute and Supreme Court precedent bar Esformes from seeking any further particularity in this case as a way of challenging the grand jury's finding." DE 89 at 15.

---

[3] Today the Government filed a Second Superseding Indictment. Mr. Esformes plans file a Motion For Bill of Particulars in the criminal case, and will ask this Court to take judicial notice of it.

Finally, the government ignores the unique benefits it has reaped from seeking a civil restraining order under § 1345, as distinct from what it is entitled to restrain criminally. Although the Eleventh Circuit has not decided the issue, every other circuit, except one, has held that the criminal forfeiture statutes (including 18 U.S.C. §§ 982, 1963 and 21 U.S.C. §853) do *not* authorize the pretrial restraint of "substitute assets."*E.g., United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008). And while the Fourth Circuit has been the only outlier, *see In re Assets of Billman,* 915 F.2d 916, 921 (4th Cir. 1990), the United States, in response to questions from Justice Sotomayor during the oral argument in *Luis v. United States*, 136 S. Ct. 1083 (2016) (Case No. 14-419), conceded that the difference between Section 1345 and the other forfeiture statutes (e.g., section 853) is that 1345 authorizes pretrial restraint of untainted assets, whereas the other statutes do not. Tr. Oral Argument at 45-46 (available online via SCOTUSblog).

## CONCLUSION

When it suits the government's desired outcome, it invokes the civil nature of § 1345. However, when compliance with the Federal Rules of Civil Procedure is deemed undesirable, the government proposes to rewrite the statute. The Court should dismiss the Complaint for failure to state a claim upon which relief can be granted and deny the government's request for a preliminary injunction.

-10-

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard, Suite 1300
Miami, FL  33131
Tel: (305) 371-6421

By:     /s/ Howard Srebnick
         **ROY BLACK, Esq.**
           Fla. Bar No. 126088
         **HOWARD SREBNICK, Esq.**
           Fla. Bar No. 919063
         **JACKIE PERCZEK, ESQ**.
           Fla. Bar No. 0042201
         **G. RICHARD STRAFER, ESQ.**
           Fla. Bar No. 389935

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Feb. 14, 2017, I served all counsel of record by

electronically filing the foregoing with the Clerk of Court using the CM/ECF.

/s/ Howard Srebnick