UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-23148-CV-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PHILIP ESFORMES,

    Defendant.
_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO MODIFY PRELIMINARY INJUNCTION TO RELEASE
FUNDS FOR LEGAL FEES AND EXPENSES THROUGH TRIAL**

Defendant Philip Esformes ("Esformes") has been represented in his criminal case by counsel of his choice – including multiple law firms and attorneys – for over two and a half years. Thus, there is no constitutional issue here like the one presented in *United States v. Luis*, 136 S. Ct. 1083 (2016), where an asset freeze prevented the defendant from retaining counsel. Even if there were, Esformes' request for a blank check for attorney's fees is unreasonable, especially in light of the millions already released from restrained funds for his criminal defense. For these reasons, the Court should deny Esformes' Motion to Modify Preliminary Injunction to Release Funds for Legal Fees and Expenses Through Trial (ECF No. 224) (the "Motion").

## BACKGROUND

On July 20, 2016, the United States filed this civil action pursuant to 18 U.S.C. § 1345 to freeze the assets of Esformes up to the amount of the health care fraud scheme for which he was criminally charged in a parallel case. The criminal case charges Esformes with, among other

things, masterminding a scheme to unlawfully cycle patients through a network of hospitals, skilled nursing facilities, and assisted living facilities through the payment and receipt of kickbacks. *United States v. Esformes*, No. 16-20549-Cr-Scola, ECF No. 869 (Third Superseding Indictment). Trial in the criminal case began on February 11, 2019 and is ongoing.

On November 13, 2018, pursuant to the parties' agreement in this case, the Court entered a Stipulated Preliminary Injunction ("PI") pursuant to 18 U.S.C. § 1345, which authorizes the freezing of assets when a defendant is engaging in federal health care offenses or dissipating the proceeds of such offenses. The PI enjoined Esformes, as well as "all persons acting in concert and participation with him," from "alienating, withdrawing, transferring, removing, dissipating, or otherwise disposing of, in any manner, any moneys or sums [or assets] . . . that are the proceeds or profits from the [Esformes'] federal health care offenses or property of an equivalent value of such proceeds or profits." PI at 2, 3 ¶¶ 2-3 (ECF No. 217). Such an injunction ensures that, upon a criminal conviction, assets are available for purposes of forfeiture and restitution to victims. *United States v. DBB, Inc.*, 180 F.3d 1277, 1284 (11th Cir. 1999).

Also pursuant to the parties' agreement, the Court entered a separate Order releasing "checks in the possession of A. Norman Knopf totaling approximately $2.8 million for the sole purpose of criminal defense legal services, *including for trial*, beginning as of August 27, 2018 (i.e. fees and related expenses) on behalf of Philip Esformes." Order at 1 ¶ 1 (emphasis added) (ECF No. 218). Prior to this agreement, Esformes had not sought the release of any frozen funds in this case. As he explains in his Motion, he had relied on his father to pay for his attorney's fees. Motion at 2 ¶ 4. The Court's Order further provided that, "[i]f at any point in time Mr. Esformes seeks funds in addition to the [$2.8 million] he would need to file a motion with the Court

explaining why more fees are reasonable to justify the release of additional substitute assets. The government would have the opportunity to object to any such request." Order at 2 ¶ 4 (ECF No. 218). Finally, the Order provided that the preliminary injunction freezing Esformes' substitute assets in this case would dissolve "upon entry of a final judgment resolving all asset forfeiture and restitution issues in . . . the Criminal Case." *Id.* at 2 ¶ 6.

In his current Motion, Esformes seeks "the further release of assets" "to have his legal team compensated for their time . . . on an hourly basis, at commercially reasonable rates that his legal team charges other similarly situated clients." Motion at 1, 7. Esformes does not identify a specific amount for release or specific hourly rates, but rather seeks the open-ended ability to use the frozen funds to pay an unspecified number of attorneys an indeterminate amount through trial.

## ARGUMENT

There is no constitutional basis for releasing Esformes' assets because he has been represented by his counsel of choice throughout the criminal proceedings against him, including in his ongoing criminal trial. Moreover, the United States has already agreed to the release of approximately $2.8 million for Esformes' legal fees, including for his representation at trial. Esformes has shown neither the need for, nor the reasonableness of, additional funds. At the conclusion of the ongoing criminal trial, that court can resolve any competing claims to Esformes' assets.

### I.     **Esformes Has No Constitutional Right to the Release of Assets**

Esformes premises his current motion on the Supreme Court's decision in *Luis v. United States*, 136 S. Ct. 1083 (2016), even though his own motion recognizes that *Luis* held the pretrial restraint of substitute assets violates the Sixth Amendment only where such assets were "needed

to *retain* counsel of choice." Motion at 2 ¶ 3 (quoting *Luis*, 136 S. Ct. at 1088) (emphasis added). In *Luis*, the defendant had been unable to "hire counsel to defend her in her criminal case," as a result of the preliminary injunction entered pursuant to 18 U.S.C. § 1345. *Luis*, 136 S. Ct. at 1088; *cf. United States v. Kaley*, 579 F.3d 1246, 1249-50 (11th Cir. 2009) (considering asset restraint under forfeiture statutes that prevented defendants from retaining counsel of choice). In cases where a criminal defendant has the ability to retain, or does in fact retain, counsel of choice, there is no constitutional violation. *United States v. Marshall*, No. 16-4494, 2018 WL 5809728, at *4 (4th Cir. Nov. 6, 2018) ("Because Marshall was represented by counsel of his choice, there was no need for the seized funds and, thus, no *Luis* error.").

Here, the Temporary Restraining Order and subsequent Preliminary Injunction entered in this case have not prevented Esformes from retaining his counsel of choice. Marissel Descalzo, then with Carlton Fields and now with the firm of Tache, Bronis, Christianson and Descalzo, P.A., entered a permanent appearance on behalf of Esformes on August 1, 2016, shortly after Esformes was arrested in the criminal case. *United States v. Esformes*, No. 16-20549-Cr-Scola, ECF No. 55. The same day, Michael Pasano of Carlton Fields also entered a permanent appearance on behalf of Esformes. *Id.*, ECF No. 56.[1] In addition, Roy Black, Howard Srebnick, and Jackie Perczek of the law firm Black, Srebnick, Kornspan & Stumpf, P.A. ("BSKS") have all entered "limited" appearances as counsel for Esformes. *Id.*, ECF Nos. 111, 531. Despite the "limited" qualifier, they have engaged in extensive litigation on behalf of Esformes in his criminal case, well beyond the scope originally specified in the notices of limited appearance. *See id.* Finally, as Esformes recognizes in the Motion, his attorneys from BSKS

---

[1] Mr. Pasano withdrew as Esformes' counsel on December 27, 2017. *Id.*, ECF No. 691.

have committed to trying the criminal case and are, in fact, currently doing so, along with other attorneys. Motion at 3; *United States v. Esformes*, No. 16-20549-Cr-Scola, ECF Nos. 1110, 1115 (minute entries for first two trial days, listing appearances from at least six attorneys from three different firms on behalf of Esformes).

Having secured the services of these attorneys, Esformes has no constitutional basis for seeking additional frozen funds to pay outstanding or future legal expenses. *See* Motion at 5 § 8 (noting unpaid balances for January 2019 and predicting further charges for future months). When retained, each of these defense counsel was required to "make financial arrangements satisfactory to themselves and sufficient to provide for representation of each defendant until the *conclusion* of the defendant's case at the trial level." S.D. Fla. L.R. 88.7(a) (emphasis added). If counsel failed to make such arrangements when they took on Esformes' representation, they can find no remedy in the *Luis* decision. *Luis* did not provide private counsel with any right to access properly restrained assets to pay outstanding legal bills. Rather, *Luis* held that criminal defendants have a Sixth Amendment right to a release of untainted funds needed to retain criminal defense counsel of choice. Esformes has exercised that right here. Because he will benefit from representation by counsel of choice throughout his criminal trial, he has no further claim under the Sixth Amendment. Whatever financial arrangements he made with the lawyers and firms representing him are a private matter and not within the purview of this case.

**II.     Even if There Were a Constitutional Basis for a Release of Funds, Esformes Has Demonstrated Neither Need Nor Reasonableness**

Both before and after the *Luis* decision, courts have required that defendants seeking access to restrained assets to pay their attorneys must demonstrate (1) a need for the restrained assets – meaning they have no other source for paying the attorney's fees – and (2) that the

amount of funds they seek is reasonable. Esformes has satisfied neither of these two prongs in his Motion.

### A.  A Blank Check Is Not a "Reasonable Fee"

Even if there were a constitutional basis for releasing funds in this case, the Court in *Luis* made clear that it was not authorizing a "blank check," which is essentially what Esformes seeks from this Court. He has not sought a specific amount to be released from the scope of the preliminary injunction; he has not provided an estimate of the amount he may need to pay his trial team; he has not provided proposed hourly billing rates for each of the attorneys representing him; he has not provided any end date, as trial and post-trial proceedings could extend for quite some time; and he has not shown how much has already been paid to his attorneys through other means, so that the Court can assess the overall reasonableness of the attorney's fees to be paid.

The decision in *Luis* anticipated concerns that defendants may seek a blank check from frozen funds to pay attorneys. The plurality opinion in *Luis* addressed this concern and stated that it was not worried that "defendants will 'be allowed to circumvent [the usual forfeiture rules] by using . . . funds to pay for a high, or even the highest, priced defense team [they] can find.'" *Luis*, 136 S. Ct. at 1095-96 (citation omitted); *see also United States v. Marshall*, No. 5:15-CR-36, 2016 WL 3937514, at *6 (N.D. W.Va. July 18, 2016) ("It must be noted, however, that the Court in *Luis* expressed concern over granting carte blanche for attorneys [sic] fees."). The Court thus limited its holding by stating that "the defendant in this case has a Sixth Amendment right to use her own 'innocent' property to pay a *reasonable fee* for the assistance of counsel." *Luis*, 136 S. Ct. at 1096 (emphasis added). The phrase "reasonable fee" would mean nothing if

6

Esformes were granted the ability, as he requests in the Motion, to an unlimited amount of substitute assets for attorney's fees.  While Esformes' Motion refers to the complexity of the criminal case against him and the large amounts alleged to have been fraudulently billed to Medicare, he has not and cannot demonstrate how a blank check can constitute a "reasonable fee."  This is especially so given the $2.8 million previously released from the scope of the injunction by agreement of the parties and the amounts previously paid in attorney's fees by Esformes' father, which are likely in the millions as well.  Thus, Esformes already has compensated his counsel at a level more than commensurate with the complexity of this case.

### B. Esformes Has Not Demonstrated a Need to Access the Frozen Assets

Apart from reasonableness, Esformes has also failed to demonstrate a need to access the frozen funds to pay his attorneys.  It is "settled law" that a defendant must demonstrate need to use restrained funds for attorney's fees.  *United States v. Hernandez-Gonzalez*, No. 16-20669-Cr-Scola/Torres, 2017 WL 2954676, at *7 (S.D. Fla. June 26, 2017), *adopted by* 2017 WL 3446815 (S.D. Fla. Aug. 10, 2017).

The requirement to show need derives from a line of cases known as *Jones-Farmer*, which together require criminal defendants to make a threshold showing of significant hardship if a court is to grant a post-indictment hearing challenging an asset restraint under the forfeiture statutes. *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) ("As a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family."); *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001) (a defendant is entitled to a pre-trial hearing only if he makes "a threshold showing of need to use wrongly seized assets to pay his attorneys").  Many courts have

7

followed the *Jones-Farmer* rule, requiring defendants to demonstrate financial need before granting a hearing on whether restrained assets should be released.[2] Courts have also considered the finances of family members in assessing financial need. *See United States v. Kirshenbaum*, 156 F. 3d 784, 792 (7th Cir. 1998); *Hernandez-Gonzalez*, 2017 WL 2954676, at *7 (noting that "a court may inquire into the finances of family members when assessing financial need").

As he explains in his Motion, Esformes has "relied on his father, who advanced the fees and expenses of litigating against the government while Esformes remained pretrial detained." Motion at 2 § 4.[3] Esformes does not explain why his father, Morris Esformes, cannot continue to do so through trial. Esformes' father has an ownership interest in many of the health care facilities and related companies owned by Esformes, and Morris Esformes continues to receive payments from them. For example, the Interim Financial Manager monitoring the Esformes facilities recently informed the United States of a payment of $180,000 from Terrace of Kissimmee and a payment of $75,000 from Terrace of St. Cloud to EMI, one of several management companies paid by these two facilities. EMI appears to be entirely owned by Morris Esformes.[4] Before releasing any additional frozen funds for payments to Esformes' attorneys, the Court should

---

[2] *See, e.g.*, *United States v. Bonventre*, 720 F.3d 126, 128, 130-131 (2d Cir. 2013); *United States v. Jamieson*, 427 F.3d 394, 407 (6th Cir. 2005); *United States v. Yusuf*, 199 F. App'x 127, 132 (3d Cir. 2006); *see also United States v. Gordon*, 657 F. App'x 773, 777-78 (10th Cir. 2016) (applying *Jones* after the Supreme Court's decision in *Luis*).

[3] As the United States has noted, Esformes' father has also previously paid for the legal expenses of other individuals implicated in the health care fraud scheme his son is accused of orchestrating. *See* United States' Reply in Support of Its Motion for Preliminary Injunction at 20 n.13 (ECF No. 79).

[4] The United States also previously noted that, prior to his arrest, Esformes had made significant financial transfers to his father. *See* United States' Reply in Support of Its Motion for Preliminary Injunction at 23 (ECF No. 79).

inquire into whether Esformes' father, or any other family members, have the ability to pay his outstanding attorney's fees through trial.

## CONCLUSION

Prior to the filing of his Motion, Esformes' assets had been restrained in this case for two and a half years. That restraint did not impede his ability to retain and be zealously represented by the lawyers of his own choosing. Having exercised his Sixth Amendment right to retain criminal defense counsel of choice, Esformes has no constitutional basis for seeking any additional release of the assets properly restrained in this case pursuant to 18 U.S.C. § 1345. Those assets are frozen so that they may be available for forfeiture or restitution in the criminal case, which is ongoing. When the criminal case concludes, the criminal court will resolve issues relating to forfeiture and restitution and decide how the assets frozen in this case are to be distributed. Any claims by Esformes' attorneys to those assets can be made in the context of those proceedings. Even if Esformes had raised a constitutional issue here, he has shown neither the need to access the restrained assets, nor the reasonableness of a request for what is effectively a blank check. Esformes' Motion should be denied.

Dated: February 14, 2019

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
Southern District of Florida

By: *Susan Torres*
SUSAN TORRES (Florida Bar No. 133590)
E-mail: Susan.Torres@usdoj.gov
Assistant United States Attorney
99 N.E. 4th Street
Miami, Florida 33132
Telephone: (305) 961-9331
*Attorneys for United States of America*