# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20470-CR-LENARD/GOODMAN

**UNITED STATES OF AMERICA,**

**v.**

**ALVARO LOPEZ TARDON,**

    Defendant.

_____/

## ORDER GRANTING IN PART THE GOVERNMENT'S MOTION FOR FORFEITURE MONEY JUDGMENT AND FOR ORDER OF FORFEITURE OF SUBSTITUTE ASSETS (D.E. 550) AND GRANTING IN PART DEFENDANT'S MOTION FOR RETURN OF PROPERTY AND TO RELEASE LIS PENDENS (D.E. 517)

**THIS CAUSE** is before the Court on the Government's Motion for Forfeiture Money Judgment and for Order of Forfeiture of Substitute Assets ("Forfeiture Motion," D.E. 550), filed August 15, 2014. Defendant filed a Response on September 2, 2014 ("Response," D.E. 580), to which the Government filed a Reply on September 5, 2014 ("Reply," D.E. 581). Also before the Court is Defendant's Motion for Return of Property and to Release Lis Pendens ("Motion for Return of Property," D.E. 517), filed July 30, 2014. The Government filed a Response to the Motion for Return of Property on August 18, 2014 (D.E. 552), and a Notice of Supplemental Authority on August 26, 2014 (D.E. 572). Upon review of the pleadings, and the record, the Court supplements its oral findings as follows.

## I.      Background

On July 12, 2011, a Grand Jury returned an Indictment charging Defendant, Alvaro Lopez Tardon, and others, with conspiring to launder money.  (See D.E. 3.)  The Indictment's forfeiture allegations included a money judgment, bank accounts, and real and personal property.  (See id. at 4-11.)  On July 13, 2011, the Court issued a Post-Indictment Restraining Order, restraining twenty-six bank accounts belonging to Defendant and/or his co-conspirators.  (See D.E. 10.)

On May 29, 2012, a Grand Jury returned a Second Superseding Indictment ("SSI") charging Defendant with one count of conspiring to launder money in violation of 18 U.S.C. § 1956(h) (Count 1) and thirteen counts of substantive money laundering in violation of 18 U.S.C. § 1957 (Counts 2 through 14).  (See D.E. 203.)  The SSI also contained forfeiture allegations seeking a money judgment of $26,443,771.00, twelve luxury automobiles, sixteen pieces of real property, twenty-six bank accounts, and several other items.  (Id. at 5-11.)

On June 11, 2014, a jury convicted Defendant of all charges.  (See Jury Verdict, D.E. 484.)  The jury was retained for forfeiture proceedings which occurred on June 12, 2014.  (See D.E. 488.)  The jury returned a Special Verdict finding that some, but not all, of the property listed in the SSI's forfeiture allegations was involved in or traceable to the offenses of conviction, and therefore subject to criminal forfeiture ("forfeitable property").  The forfeitable property includes:

1)  One 2008 Bugatti Veyron (VIN: VF9SA25C08795118);

2)  One Ferrari Enzo (VIN: ZFFCW56A830133927);

2

3) One 2009 Mercedes-Benz Maybach 57S (VIN: WDBVF79J89A002576)

4) One 2011 Mercedes-Benz G55K (VIN: WDCYC7BF8BX190896)

5) One 2010 Mercedes-Benz G55 AMG (VIN: WDCYC7BF8AX183252);

6) One 2010 Land Rover Range Rover (VIN: SALMF1E48AA327736);

7) Real property known and numbered as 2475 S. Bayshore Drive, Villa 3, Coconut Grove, FL 33133, together with all appurtenances, improvements and attachments thereon;

8) Real property known and numbered as 100 S Pointe Drive, Unit #3801, Miami Beach, FL 33139, together with all appurtenances, improvements and attachments thereon;

9) All principal, deposits, interest, dividends and other amounts credited to account number 229016239866 at Bank of America, N.A., in the name of Sharon Cohen, Maria De Las Nieves Tardon Lopez;

10) All principal, deposits, interest, dividends and other amounts credited to account number 229037949711 at Bank of America, N.A. in the name of Alvaro Lopez Tardon; and

11) All principal, deposits, interest, dividends and other amounts credited to account number 1100002143680 at Branch Banking and Trust (BB&T), f/k/a Colonial Bank in the name of Alvaro Lopez Tardon and MIAMARK LLC.

(Special Verdict, D.E. 487 at 1-3, 9-10, 12-19.)

The property that the jury did not find was subject to forfeiture ("non-traceable property") includes:

1) One 2010 Rolls-Royce Ghost (VIN: SCA664S50AUX48905);

2) One 2006 Mercedes-Benz SLR McLaren (VIN: WDDAJ76F06M000724);

3

3) Real property known and numbered as 1155 Brickell Bay Drive, #202, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

4) Real property known and numbered as 1155 Brickell Bay Drive, #502, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

5) Real property known and numbered as 1155 Brickell Bay Drive, #2703, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

6) Real property known and numbered as 1000 S Pointe Dr., Unit #908, Miami Beach, Florida 33139, with all appurtenances, improvements and attachments thereon;

7) One (1) diamond holder, with eight (8) diamonds;

8) Eight (8) watches:

    a. one (1) Audemars Peguet - black/silver with blue face;

    b. one (1) Audemars Peguet - black/silver with white face;

    c. one (1) Audemars Peguet - black/blue face;

    d. one (1) Audemars Peguet - white/red face;

    e. one (1) Audemars Peguet Ltd Edition 93/150-blue/white & red face;

    f. one (1) Royal Offshore - red/black/yellow face, Ltd Ed 724/150;

    g. one (1) Royal Oak Offshore Grand Prix - copper/black; and

    h. one (1) Royal Oak Offshore Ltd Edition Juan P. Montoya – black/blue/white; and

9) Seven (7) miscellaneous items of jewelry:

    a. one (1) silver bracelet chain;

b.  one (1) chain with ivory tusk;

c.  one (1) gold/silver color bracelet;

d.  gold/silver color necklace;

e.  cheetah print tusk;

f.  gold/black watch with diamond Cartier; and

g.  extra link.

(See Special Verdict, D.E. 487.)

After the jury was released, the Court questioned the Parties about the custody of

the non-traceable property:

> THE COURT: . . . What I am concerned about today is the preservation of the assets that were not ordered to be forfeited by the jury, those specific pieces of property.  I believe there's one vehicle, two, maybe three, apartments and the timepieces.  Correct?
>
> MR. SREBNICK [defense counsel]: And some jewelry.
>
> THE COURT: And some jewelry.
>
> So I'm concerned about the preservation, how those items are going to be preserved pending my decision on the money judgment and sentencing.
>
> MS. SHEEHAN [prosecutor]: Your Honor, pursuant to 21, USC, 853(g), you have the ability to enter a protective order protecting the assets in order to ensure their eventual forfeitability.
>
> I believe the real properties are all under a notice of lis pendens.  So they cannot be disposed of.  And all of the other assets are under custody of the United States.
>
> THE COURT: So do you agree that the properties will remain in the custody of the United States until such time as a determination has been made on the money judgment and sentencing has gone forward?

MR. KLUGH [defense counsel]: I believe -- yes, your Honor.  That's true. And I think everything is protected.  And to the extent we are not under any formal order, we still deem ourselves to be obligated to protect anything that we have anything to do with.  So we will deem ourselves –

THE COURT: So everybody agrees that the status quo as far as these -- the properties -- I understand there's a <u>lis pendens</u>.  So nothing will go forward with the properties with the <u>lis pendens</u>.  But the personal items of jewelry and the timepieces will remain as status quo until such time as I've made my rulings.

MR. KLUGH: Yes.

(Transcript (6/12/14), D.E. 536 at 139-141.)  Thus, the non-traceable property is currently being held by the Government pursuant to an agreed-upon protective order, pending the Court's ruling herein.  Defendant seeks the return of the non-traceable property to satisfy outstanding legal fees and fees for appellate counsel of choice.  (Motion for Return of Property at 1.)  The Government seeks forfeiture of the non-traceable property as substitute assets to satisfy a prospective forfeiture money judgment.  (Forfeiture Motion at 10-11.)

On July 1, 2014, the Court entered a Preliminary Order of Forfeiture, ordering the forfeitable property to be turned over to the United States pursuant to 18 U.S.C. § 982(a)(1).  (D.E. 496 ¶ 7.)  On July 11, 2014, Defendant filed a Motion to Vacate and to Reconsider Preliminary Forfeiture (D.E. 499), which the Court denied by Order entered August 19, 2014 (D.E. 558).

On July 30, 2014, Defendant filed the instant Motion for Return of Property seeking an Order returning the non-traceable property to him to satisfy legal expenses. (D.E. 517.)  On August 11, 2014, the Parties filed a Joint Motion in which they agreed

that "the status quo regarding the 'non-traceable' assets that are the subject of the motion for return of property [DE 517] shall remain in effect until the court rules on the motion." (D.E. 543 ¶ 4.)

On August 15, 2014, the Government filed the instant Motion for Forfeiture Money Judgment and for Order of Forfeiture of Substitute Assets. (D.E. 550). Therein, the Government seeks a forfeiture money judgment pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(B) in the amount of $14,358,639.64, and the forfeiture of the non-traceable property as substitute assets pursuant to 21 U.S.C. § 853(p) in partial satisfaction of the prospective forfeiture money judgment. (D.E. 550.)

## II.   Discussion

The Court is presented with two competing motions—one from the Government, one from the Defendant—both seeking entitlement to the non-traceable property. For the Government to be entitled to the non-traceable property as substitute assets in partial satisfaction of the forfeiture money judgment, the Court must determine whether the Government is entitled to a forfeiture money judgment. Accordingly, the Court begins by addressing the Government's forfeiture motion.

### A.   Motion for Forfeiture Money Judgment and for Order of Forfeiture of Substitute Assets

The Government argues that it is entitled to a forfeiture money judgment in the amount of $14,358,639.64 pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(B), as well as forfeiture of the non-traceable property as substitutes assets in partial

satisfaction of the prospective forfeiture money judgment.  (Motion at 1.)  Defendant argues that the Government's Forfeiture Motion is untimely and fails on its merits.

## 1.    Timeliness

Defendant argues that the Forfeiture Motion is untimely (1) under Federal Rule of Criminal Procedure 32.2, (2) for failing to comply with the Court's Order of June 6, 2014,[1] and (3) for failing to make the current forfeiture claims before the deadline for presentence objections.  (Response at 3-4.)  The Court will discuss each in turn.

### a.    Rule 32.2

First, Defendant argues that "the motion is untimely under Fed. R. Crim. P. 32.2, which requires that the government proceed directly after the verdict – and well before sentencing – to pursue any forfeiture order authorized by statute."  (Id. at 2.)  In Reply, the Government contends that it complied with Rule 32.2 by filing the Motion prior to the sentencing hearing.

Rule 32.2(b)(1)(A) provides, in relevant part, that "[a]s soon as practical after a verdict or finding of guilty, . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. . . . If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."  Rule 32.2(b)(4) provides that "[t]he court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows

---

[1]    Defendant's Response refers to the at-issue court directive as the "court's Order of June 4, 2014."  (See Response at 3.)  This appears to be a scrivener's error, as the trial transcript to which Defendant correctly cites is the June 6, 2014 transcript.

of the forfeiture at sentencing." Thus, the rule's "[a]s soon as practical" language refers to when the Court's forfeiture determination must occur, <u>not</u> when the Government's motion regarding forfeiture must be filed. It appears, then, that a motion for forfeiture is timely so long as it enables the Court to make a forfeiture determination "[a]s soon as practical after a verdict or finding of guilty[.]" Fed. R. Crim. P. 32.2(b)(1)(A).

The Court finds that the soonest practical time to determine the amount of a forfeiture money judgment was the sentencing hearing. The amount of money the Government seeks is the amount of money Defendant laundered as stated in Paragraph 15 of the Presentence Investigation Report (PSR): $14,358,639.64. (<u>See</u> PSR ¶ 15 ("**Tardon** distributed multi-thousand kilograms of cocaine in Europe, which he directly imported from South America, and caused to be imported in to Spain. He then laundered $14,358,639.64 in illicit narcotics proceeds from the sale of said cocaine in the United States.").) At the sentencing hearing, Defendant disagreed with the $14,358,639.64 figure. (<u>See</u> Transcript (8/21/14) at 50-51.) The Government therefore offered evidence to explain "where the monies came from." (<u>Id.</u> at 51.) This included extensive testimony from FBI Special Agent Daniel Gaitan regarding Defendant wiring $2,910,073 in criminally-derived proceeds directly to third parties. (<u>Id.</u> at 53-81.) Special Agent Gaitan clarified that there was no overlap or "double counting" in adding the sum total of the money laundered by Defendant. (<u>Id.</u> at 55.) Additionally, Exhibit 1—depicting wire transfers sent directly to third-parties in the U.S. (<u>see</u> D.E. 550-6)—was introduced as evidence at the sentencing hearing. Defendant also called Investigative Analyst Isabel Fleitas to confirm some of the amounts. (Transcript (8/21/14) at 83-85.) After all of the

9

evidence was presented, the Court found that the Government had proven the

$14,358,639.64 amount by a preponderance of the evidence, based upon the evidence at

trial and the presentation of credible evidence at the sentencing hearing, and overruled

Defendant's objection.  (Id. at 86.)

Because the soonest practical time for the Court to determine the amount of a

forfeiture money judgment in this case was the sentencing hearing, the Court finds that

the instant Motion—filed four days before the sentencing hearing was scheduled to begin

and six days before it actually commenced on August 21, 2014 (see D.E. 548)—is timely

under Rule 32.2.

### b.    The Court's June 6, 2014 Order

Second, Defendant argues that the Government failed to comply with the Court's

June 6, 2014 Order directing the Government to respond to Defendant's Forfeiture

Memorandum (see D.E. 472), filed June 4, 2014.  (Response at 3.)  After sending the jury

to the jury room for deliberations on June 6, 2014, the Court stated:

> . . . In regard to the forfeiture issues that have been briefed by both
> sides, this is where we are.  As I understand it, the defendant has, pursuant
> to his rights, demanded forfeiture to be determined by the jury on both
> specific properties and judgments.
>
>      The government's position is that judgments are to be determined by
> the Court.  Pursuant to United States versus Curbelo, C-U-R-B-E-L-O, 726
> F.3d 1260, a 2013 decision by the Eleventh Circuit, money judgments
> pursuant to Federal Rules of Criminal Procedure 32.2(b)(1)(A), are to be
> determined by the Court.
>
>      However, it's not clear to me, and I'm going to need more briefing,
> especially the position of the government, as to whether, pursuant to
> 982(c)(1), a money judgment – I'm sorry, 982(a)(1), a money judgment is
> contained within the indictment under that statute.

. . .

So, in the initial determination that I need to make, that if there's a money judgment to be determined by the Court pursuant to the Eleventh Circuit's holding in <u>Curbelo</u>, which I am bound by.

But the next determination is whether or not I'm going to determine a money judgment.

But that can be after further briefing by the government.

Mr. Klugh had set out his position in his memorandum, and I need the government to respond to it.

(Transcript (6/6/14), D.E. 538 at 63-64.) Neither side objected to the Court's directive on grounds of timeliness or otherwise. The Government contends that it did comply with the Court's June 6 directive by first addressing the issue in its Bench Memorandum Regarding Criminal Forfeiture (D.E. 454), filed May 21, 2014, and again in the instant Motion, filed August 15, 2014.

The Court finds that the Government satisfied the Court's Order to respond to Defendant's memorandum by filing the instant Motion for Forfeiture Money Judgment. And, in any event, the Government timely addressed the issues in its May 21, 2014 Bench Memorandum.

### c. Presentence Objection Deadline

Third, Defendant argues that the instant Motion is untimely because the Government failed to file it by the July 21, 2014 presentence objection deadline. That is, the PSR does not recommend a forfeiture money judgment, the Government did not timely object to the PSR, and it therefore waived the relief sought by the instant Motion.

(Response at 4.)  The Government argues that "the absence in the PSR of any reference to the fact that United States is seeking a forfeiture money judgment does not preclude the Court from imposing this sanction against the Defendant.  Criminal forfeiture is a mandatory part of the Defendant's sentence."  (Reply at 7.)  It further argues that

> [i]f the PSR must reflect the fact that United States is seeking a forfeiture money judgment in this case, then the United States now objects to this omission.  Rule 32 specifically provides that the Court may, for good cause, "allow a party to make a new objection at any time before sentence is imposed."  Fed. R. Crim. P. 32(i)(1)(D).  In this case there is good cause to permit the Government to make this new objection to the inadvertent omission.

(Id. at 8.)  The "good cause" the Government cites is the fact that forfeiture is a mandatory part of the sentence and should be included in the PSR, and that "Defendant was made aware well in advance of the commencement of the sentencing hearing that the Government was seeking a forfeiture money judgment as part of his sentence."  (Id.)

Federal Rule of Criminal Procedure 32.2 addresses Criminal Forfeiture.  Rule 32.2(a) provides:

> A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute.  The notice should not be designated as a count of the indictment or information.  The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks.

Thus, the Rule does not require the Government to formally "move" for a forfeiture money judgment, but rather to provide notice in the Indictment of its intent to seek a money judgment.  See id.  In this case, the Government provided such notice in the Second Superseding Indictment, by requesting: "Approximately $26,443,771 in United

12

States currency, which is a sum equal in value to the property involved in the violations alleged in this Second Superseding Indictment, which the United States will seek as a personal forfeiture money judgment . . . ."  (SSI ¶ 3(a).)

Rule 32.2(b)(1), which deals with the forfeiture phase of the trial, is likewise silent as to any requirement for the government to formally move for a money judgment. Rather, as previously discussed, that rule merely requires the Court "to determine the amount of money that the defendant will be ordered to pay" if the Government seeks a money judgment.  Of course, the Court knew the Government sought a money judgment by virtue of including it in the SSI (D.E. 203 at 5) and their Bench Memorandum Regarding Criminal Forfeiture (D.E. 454 at 5), and arguing for one in open Court (see Transcript (6/3/14) D.E. 532 at 165-66).

Finally, the Sentencing Guidelines state that "[f]orfeiture is to be imposed upon a convicted defendant as provided by statute."  U.S. Sentencing Guidelines Manual § 5E1.4 (2013).  The Commentary then lists various statutes providing for forfeiture and notes that "[t]hose provisions require the automatic forfeiture of certain property upon conviction of their respective underlying offenses."  Id. § 5E1.4 cmt. (2013) (emphasis added).  Here, the Government is moving under 18 U.S.C. § 982(a)(1), which provides that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  Thus, it appears that a forfeiture money judgment is mandatory in this case, without regard to any formal motion or objection to the PSR.

13

To the extent that such an objection is required under the rules or by law, the Court accepts the objection raised in the Government's Reply brief.  (See Reply at 8.) Rule 32(i)(1)(D) provides: "At sentencing, the court: may, for good cause, allow a party to make a new objection at any time before sentence is imposed."  Allowing the objection will not result in prejudice to the Defendant who was on notice of the Government's intent to seek a forfeiture money judgment.  (See SSI ¶ 3(a); see also United States' Bench Memorandum Regarding Criminal Forfeiture, D.E. 454 at 5-6; Transcript (6/6/14) D.E. 538 at 63-64.)

In sum, the Court finds that the instant Motion is timely under Rule 32.2, the Court's previous Orders, and the relevant deadlines.  The Court therefore orders that the PSR be modified to reflect the money forfeiture issue, and adopts the PSR as modified. The Court now turns to the merits of the Government's Motion.

### 2.      Merits

The Government seeks a forfeiture money judgment pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(B) in the amount of $14,358,639.64, and the forfeiture of certain assets as substitute property pursuant to 21 U.S.C. § 853(p) in partial satisfaction of the prospective forfeiture money judgment.  (Id. at 1.)

As an initial matter, the Court previously found, when it adopted the factual findings contained in the revised PSR during the sentencing hearing on August 27, 2014, that the Government has proven by a preponderance of the evidence that Defendant laundered $14,358,639.64.  See United States v. Cabeza, 258 F.3d 1256, 1257-58 (11th Cir. 2001) ("Because Apprendi does not apply to forfeiture proceedings, our earlier

decisions on the burden of proof in such proceedings remain good law: the burden of proof on a forfeiture count is a preponderance of the evidence.") (citing United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir. 1999)). Specifically, as summarized by the Government's Motion:

> Special Agent Maurice Forbes testified that the defendant used MoneyGram and Western Union to launder approximately $490,766.06 (US) in criminal proceeds. See Gov. Ex. 154 (Demonstrative) and Gov. Ex. 155, a copy of which is attached to the Gaitan Decl. at **Exhibit 2**. Agent Forbes also testified that the defendant laundered approximately $1,436,901.82 (US) using American Express. See Gov. Ex. 152 (Demonstrative) and Gov. Ex. 153, a copy of which is attached to the Gaitan Decl. at **Exhibit 3**. Additionally, Special Agent Isabel Fletes testified that the defendant laundered $9,520,898.71 (US) using bank accounts he either owned and/or controlled. See Gov. Ex. 180, a copy of which is attached to the Gaitan Decl. at **Exhibit 4**. Lastly, Agent Gaitan will supplement the trial record by testifying that the defendant laundered $2,910,073 (US) by wiring criminally-derived proceeds directly to third parties.

(Motion at 9.) The Government supplemented the trial record with Special Agent Gaitan's sentencing hearing testimony on August 21, 2014 and with Exhibit 1—a spreadsheet detailing the date, amount, sender, and receiver of wire transfers sent directly to third parties in the United States which total $2,910,073.05. Thus, the Court adopts its previous finding that the Government has proven by a preponderance of the evidence that Defendant laundered $14,358,639.64. The Court now turns to whether the Government is entitled to a forfeiture money judgment in that amount.

### a. Forfeiture Money Judgment

First, the Government argues that it is entitled to a forfeiture money judgment in the amount of $14,358,639.64, "as this is a sum of money equal in value to the property,

real or personal, involved in the money laundering offenses of which defendant was found guilty, and/or equal in value to the property traceable to such property." (Motion at 7.) Defendant argues that "[t]he statute under which the government is proceeding, [18 U.S.C.] § 982(a)(1), does not provide for a generalized money judgment, and does not address 'proceeds' in the sense that other forfeiture provisions are concerned. Instead, § 982(a)(1) is much more narrow and goes to either particular property or property traceable from that particular property." (Response at 5.) "Only specific property as to which the 18 U.S.C. § 982(a)(1) statutory nexus is established is eligible for forfeiture, leaving the government's claim for a right to money judgment lacking in statutory and case support." (Id. at 6.)

Title 18 U.S.C. § 982(a)(1) provides: "The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." The Government relies on Untied States v. Seher, 562 F.3d 1344, 1372 (11th Cir. 2009), for this Court's authority to impose a forfeiture money judgment under section 982(a)(1). (Motion at 6-7.)

In Seher, three appellants—an individual (Seher) and two business entities—were found guilty of, inter alia, money laundering and conspiracy to launder money. 562 F.3d at 1350. The trial court entered a forfeiture money judgment of $1,610,400 against Seher pursuant to 18 U.S.C. § 982(a)(1), finding "that the evidence adduced at trial demonstrated that Defendant Seher conspired to launder $1,610,400 in drug proceeds during the course of the conspiracy." United States v. Seher, 574 F. Supp. 2d 1368, 1370

16

(N.D. Ga. 2007). It further ordered that Seher's real property could "be forfeited as a substitute asset in partial satisfaction of the money judgment against him," in the event he could not pay the $1,610,400 judgment in full. See id. at 1370-71. On appeal, Seher argued that the trial court "erred in finding that his real property could be a substitute asset under 21 U.S.C. § 853(p) for the $1,610,400 laundered in connection with the drug conspiracy . . . ." Seher, 562 F.3d at 1372. He argued (1) that the funds actually belonged to a jewelry store he worked at and that he should be deemed an intermediary, and (2) that the government failed to prove that he caused the property be unavailable. Id.

The Eleventh Circuit rejected both arguments. In doing so, it noted that because Seher "was convicted of conspiracy to launder money, it is reasonable to hold him liable for all the proceeds that were a reasonably foreseeable result of that conspiracy regardless of whether he still possesses them." Id. at 1372-73 (citing United States v. Caporale, 806 F.2d 1487, 1506-09 (11th Cir. 1986); United States v. Reiner, 500 F.3d 10, 18 (1st Cir. 2007)). The Court of Appeals concluded that "[t]he district court . . . did not err in finding that Seher's property could be a substitute assert for the personal money judgment on" the conspiracy to launder money count. Id. at 1373. In doing so, the Eleventh Circuit implicitly (if not explicitly) endorsed the exact relief the Government seeks in the instant motion: a forfeiture money judgment under 18 U.S.C. § 982(a)(1) imposed against a defendant found guilty of a money laundering offense. See id.; see also United States v. Puche, 350 F.3d 1137, 1153 (11th Cir. 2003) (affirming forfeiture money judgment under 18 U.S.C. § 982(a)(1) for monies traceable to a money laundering

17

conspiracy); <u>United States v. Huber</u>, 404 F.3d 1047, 1056 (8th Cir. 2005) ("Forfeiture under section 982(a)(1) in a money-laundering case allows the government to obtain a money judgment representing the value of all property 'involved in' the offense, including 'the money or other property being laundered (the corpus),' and 'any property used to facilitate the laundering offense.'" (quoting <u>United States v. Hawkey</u>, 148 F.3d 920, 927 (8th Cir. 1998)); <u>United States v. Baker</u>, 227 F.3d 955, 967-68 (7th Cir. 2000) (affirming forfeiture money judgment of $4.4 million in laundered prostitution proceeds). Thus, pursuant to <u>Seher</u>, the Court finds that a forfeiture money judgment is available in this case.

Defendant next argues that the Government is not entitled to a forfeiture money judgment <u>in addition to</u> forfeiture of Defendant's personal property.[2] He argues that where, as here, "the government's forfeiture motion is premised on the theory that the defendant expended (dissipated) the laundered proceeds, <u>see</u> DE:550:Ex. A (Gaitan declaration) **<u>and</u>** that those assets can be directly traced – as Exhibit 5 of the

---

[2]    The jury found that six cars, two residences, and three bank accounts were involved in or traceable to the offenses of conviction. (<u>See</u> Special Verdict, D.E. 487 at 1-3, 9-10, 12-19.) The Court has already ordered each of those items and accounts to be forfeited to the Government, (Preliminary Order, D.E. 496), and the Government has filed Acknowledgements of Service indicating seizure of the following property: (1) 2010 Mercedes-Benz G55K (D.E. 511); (2) 2010 Land Rover Range Rover (D.E. 512); (3) 2003 Ferrari Enzo (D.E. 513); (4) 2008 Bugatti Veyron (D.E. 514); (5) 2009 Mercedes-Benz Maybach 57S (D.E. 515); (6) 2011 Mercedes-Benz G55 AMG (D.E. 516); (7) residential property at 2475 S. Bayshore Drive, Villa 3, Coconut Grove, FL 33133 (D.E. 540); (8) $4,492.00 from BB&T account number 1100002143680 (D.E. 561); and (9) $113.88 from Bank of America account number 229016239866 (D.E. 562). In addition, the Government filed an Acknowledgment of Service indicating that on July 24, 2014, the Marshals posted notice of forfeiture "in an open and conspicuous manner" on the residential property at 100 S. Pointe Drive, Unite #3801, Miami Beach, Florida 33139. (<u>See</u> D.E. 539.) There is no indication in the record whether the Marshals attempted to seize Bank of America account number 229037349711.

government's motion, DE:550:Ex. 5, shows – there is no basis for a money judgment in addition to the specific forfeitures. The government's forfeiture theory cannot simply change to one of money judgment where the question of the actual nexus has already been presented to and resolved by the jury." (Response at 9.) Defendant argues, essentially, that the Government is not allowed to "double dip" by getting $14,358,369.64 in cash on top of the forfeited property.

The Government's Reply, however, asserts that "once the Government obtains a final order of forfeiture addressing all interests for the property listed in the Preliminary Order of Forfeiture and the property is then sold, the balance of the debt owed by the Defendant by virtue of a forfeiture money judgment will be credited or reduced by an amount equal to the net proceeds generated from the sale. This eliminates any concern that the Defendant will be required to pay 'double' the amount of a forfeiture money judgment based on the simultaneous forfeiture of specific property connected to his crimes." (Reply at 13.) The Court agrees that this eliminates any concerns that Defendant will be required to pay a double forfeiture.

Finally, Defendant argues that the value of the property already forfeited pursuant to the preliminary forfeiture order exceeds the total amount of funds wired from Spain, which he argues is only $9,600,000. (Response at 13.) First, the Court has already found that the Government has sustained its burden of proving by a preponderance of the evidence that Defendant laundered $14,358,639.64. Second, the values Defendant cites are estimates from websites. (See id. at 15.) He does not cite any authority for the proposition that the value of forfeited property is determined by website estimates rather

19

than sale price. The Court finds that the value of the forfeited assets must be determined from their sale after a final order of forfeiture is entered. Defendant's argument is therefore rejected as premature.

In sum the Court finds that a forfeiture money judgment is available under 18 U.S.C. § 982(a)(1). See Seher, 562 F.3d at 1373; Puche, 350 F.3d at 1153. The Court further finds that the Government is not seeking to "double dip" by securing a money judgment in addition to the proceeds from the sale of the forfeited assets, but rather that it seeks a $14,358,639.64 money judgment against which it will credit the amounts generated from the sale of forfeited assets. The Court now turns to whether the Government is entitled to substitute assets to satisfy any deficiency in the judgment.

### b.    Substitute Assets

The Government argues that "once a forfeiture money judgment is entered, the United States may move at any time, pursuant to Rule 32.2(e)(1)(B) of the Federal Rules of Criminal Procedure, to forfeit specific property belonging to the defendant having a value up to the amount of the money judgment as substitute assets." (Motion at 10.) As previously discussed, the Government is seeking forfeiture of the non-traceable property, which includes:

(a) One 2010 Rolls-Royce Ghost (VIN: SCA664S50AUX48905);

(b) One 2006 Mercedes-Benz SLR McLaren (VIN: WDDAJ76F06M000724);

(c) Real property known and numbered as 1155 Brickell Bay Drive, #202, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

(d) Real property known and numbered as 1155 Brickell Bay Drive, #502, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

(e) Real property known and numbered as 1155 Brickell Bay Drive, #2703, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

(f) Real property known and numbered as 1000 S Pointe Dr., Unit #908, Miami Beach, Florida 33139, with all appurtenances, improvements and attachments thereon;

(g) One (1) diamond holder, with eight (8) diamonds;

(h) Eight (8) watches:

  (1) one (1) Audemars Peguet - black/silver with blue face;

  (2) one (1) Audemars Peguet - black/silver with white face;

  (3) one (1) Audemars Peguet - black/blue face;

  (4) one (1) Audemars Peguet - white/red face;

  (5) one (1) Audemars Peguet Ltd Edition 93/150-blue/white & red face;

  (6) one (1) Royal Offshore - red/black/yellow face, Ltd Ed 724/150;

  (7) one (1) Royal Oak Offshore Grand Prix - copper/black; and

  (8) one (1) Royal Oak Offshore Ltd Edition Juan P. Montoya – black/blue/white; and

(i) Seven (7) miscellaneous items of jewelry:

  (1) one (1) silver bracelet chain;

  (2) one (1) chain with ivory tusk;

  (3) one (1) gold/silver color bracelet;

  (4) gold/silver color necklace;

(5) cheetah print tusk;

(6) gold/black watch with diamond Cartier; and

(7) extra link.

(Motion at 10-11.) Defendant argues that (1) there is sufficient value in the assets subject

to the preliminary forfeiture order to satisfy the judgment, and (2) even if there was not

sufficient value in those assets, the substitute assets the Government seeks to be forfeited

"are owned by other entities or persons" and "[t]he substitute asset theory applies only to

property owned by the defendant." (Response at 16.) Immediately thereafter, however,

Defendant concedes that he owns at least some of the personal property sought by the

Government as substitute assets. (Id.)

Federal Rule of Criminal Procedure 32.2(e)(1)(B) authorizes the Court, on the

Government's motion, to enter an order of forfeiture or amend an existing order of

forfeiture to include substitute property that qualifies for forfeiture under an applicable

statute. Here, the applicable statute is 21 U.S.C. § 853(p), which is incorporated by

reference into section 982(b), and provides:

(1) In general

Paragraph (2) of this subsection shall apply, if any property described in
subsection (a), as a result of any act or omission of the defendant—

    **(A)** cannot be located upon the exercise of due diligence;
    **(B)** has been transferred or sold to, or deposited with, a third party;
    **(C)** has been placed beyond the jurisdiction of the court;
    **(D)** has been substantially diminished in value; or
    **(E)** has been commingled with other property which cannot be divided
    without difficulty.

(2) Substitute property

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

Thus, to be entitled to forfeiture of substitute property, the Government must demonstrate that the property subject to forfeiture is unavailable due to an act or omission by Defendant.  See id.; see also United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999).

The Government's Motion alleges that Special Agent Gaitan investigated and concluded that "assets once owned or controlled by the defendant cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; have been placed beyond the jurisdiction of the court; have been substantially diminished in value or have been commingled with other property which cannot be divided without difficulty."  (Motion at 13 (citing Gaitan Decl. ¶ 6).)  It further asserts that Defendant "has not disclosed the location of forfeitable property sufficient to satisfy the prospective forfeiture money judgment."  (Id. (citing Gaitan Decl. ¶ 7).)  In Seher, the Government submitted the Declaration of an IRS Special Agent that stated that Seher had "'dissipated or otherwise disposed of the proceeds of his crimes.'"  The Eleventh Circuit held that this statement was "sufficiently specific in identifying Seher's acts and omissions for the district court to rely on it as the basis for ordering forfeiture under the substitute asset provision."  Seher, 562 F.3d at 1373.  Thus, pursuant to Seher, the Court finds that the Government has made the requisite showing under Rule 32.2 and 21 U.S.C.

23

§ 853(p) for an order of forfeiture of substitute assets.  See id.; see also Candelaria-Silva, 166 F.3d at 42; United States v. Voigt, 89 F.3d 1050, 1088 (3d Cir. 1996) ("Once property subject to forfeiture under § 982(a)(1) is no longer identifiable due to some act of the defendant, the government may seek any property, cash or merchandise, in satisfaction of the amount of criminal forfeiture to which it is entitled."); United States v. Henry, 64 F.3d 664, 1995 WL 478635, at *4 (6th Cir. 1995) ("[T]he jury verdict indicating that the Ewing Court residence should not be forfeited does not prevent the forfeiture of the property as a substitute asset.") (unpublished table decision).

However, because Defendant is seeking return of the assets that the Government seeks as substitute property, the Court must address Defendant's competing Motion for Return of Property and to Release Lis Pendens.

### B.      Motion for Return of Property and to Release Lis Pendens

Defendant's Motion for Return of Property and to Release Lis Pendens requests the Court "to enter an order compelling the government to return/release assets that were deemed by the jury's verdict to be not traceable to the charged offenses."  (D.E. 517 at 1.) It further requests the Court "to release the lis pendens that currently cloud the title to four real properties also deemed by the jury's verdict to be not traceable to the charged offenses."  (Id.)  "At a minimum defendant seeks to use those assets - in accordance with his Sixth Amendment rights - to pay pending legal bills for trial counsel and fees for appellate counsel of choice."  (Id.)  He attaches an invoice indicating that he owes counsel $104,308.73.  (Id. at 9.)  The Government argues that if the Court grants the relief sought in its Motion for Money Judgment and for Order of Forfeiture of Substitute

Assets then the issues raised by Plaintiff's motion become moot. (D.E. 552 at 5.) It also argues that "the Court is required to enter an order forfeiting this substitute property pursuant to § 853(p) notwithstanding the Defendant's claim of right under the Sixth Amendment to the same assets for purposes of satisfying the balance apparently due for legal services . . . ." (D.E. 572 at 3.)

The Court has considered both Parties' arguments and finds that Defendant should be able to recover enough of the non-traceable property to satisfy the outstanding legal fees he identifies in the Motion and accompanying invoices. See United States v. Luis, 966 F. Supp. 2d 1321, 1335 (S.D. Fla. 2013). In Luis, the defendant sought the return of property enjoined pursuant to 18 U.S.C. § 1345, which "allows courts to grant injunctive relief to prevent certain types of fraud and to prevent alienation of property associated with the fraud." Id. at 1325. The defendant in Luis argued that "the Sixth Amendment requires the release of funds to pay attorney's fees and . . . that the language of § 1345 does not permit the restraint of assets needed for attorney's fees." Id. at 1330. The court found that the statute permitted the restraint of assets that would otherwise be used for payment of attorney's fees, but that the court retained discretion to release assets for payment of attorney's fees. Id. at 1335.

> In exercising its discretion for release of assets for payment of attorney's fees, the Court should consider whether the defendant is able to afford representation in the § 1345 proceedings. See United States v. Speqtrum, Inc., No. CIV.A. 10–2111 JEB, 2012 WL 517526, at *2 (D.D.C. Feb. 16, 2012); United States v. Jaime, No. 2:10–CV–00498, 2011 WL 145196, at *1–2 (S.D. W.Va. Jan. 18, 2011). If "restrained property is a defendant's only means of securing counsel" the Court may wish to exercise its discretion to release assets to secure counsel. See Speqtrum, Inc., 2012 WL 517526, at *2.

25

It appears that the Court in <u>Luis</u> declined to exercise its discretion to release assets to satisfy attorney's fees because she did not need the money to "secure" counsel, who had already represented her throughout the section 1345 proceedings. <u>See id.</u>

Here, Defendant is requesting a release of assets to satisfy legal fees incurred during trial and to retain appellate counsel of record. (D.E. 517 at 3.) He signed an agreement with defense counsel's law firm, and he owes that law firm $104,308.73 for services rendered. The Court finds that Defendant should be permitted to recover enough non-traceable assets to satisfy the $104,308.73 amount identified in his Motion.

In sum, the Court concludes that the Government is entitled to an Order of Forfeiture of Substitute Assets with respect to the non-traceable property to satisfy any deficiency in the money judgment. However, the Court finds that Defendant should be permitted to satisfy his outstanding $104,308.73 legal bill with proceeds of the non-traceable property. <u>See Luis</u>, 966 F. Supp. 2d at 1335. Therefore, the Government shall release and return to Defendant the 2010 Rolls-Royce Ghost (VIN: SCA664S50AUX48905) so that he can satisfy the outstanding legal fees identified by the invoice included in his Motion. (<u>See</u> D.E. 517 at 9.) In the event the 2010 Rolls-Royce Ghost sells for less than $104,308.73, Defendant shall notify the Court of the deficiency. In the event the 2010 Rolls-Royce Ghost sells for more than $104,308.73, Defendant shall remit the net profit to the Government in partial satisfaction of the forfeiture money judgment Ordered herein.

## III. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) The Government's Motion for Forfeiture Money Judgment and for Order of Forfeiture of Substitute Assets (D.E. 550), filed August 15, 2014, is **GRANTED IN PART** consistent with this Order;

(2) A money judgment against Defendant Alvaro Lopez Tardon is **ORDERED** in the amount of $14,358,639.64;

(3) The following property shall be **FORFEITED** to the Government as substitute assets in partial satisfaction of a deficiency in the money judgment:

    1) One 2006 Mercedes-Benz SLR McLaren (VIN: WDDAJ76F06M000724);

    2) Real property known and numbered as 1155 Brickell Bay Drive, #202, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

    3) Real property known and numbered as 1155 Brickell Bay Drive, #502, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

    4) Real property known and numbered as 1155 Brickell Bay Drive, #2703, Miami, FL 33131, with all appurtenances, improvements and attachments thereon;

    5) Real property known and numbered as 1000 S Pointe Dr., Unit #908, Miami Beach, Florida 33139, with all appurtenances, improvements and attachments thereon;

    6) One (1) diamond holder, with eight (8) diamonds;

    7) Eight (8) watches:

        a. one (1) Audemars Peguet - black/silver with blue face;

        b. one (1) Audemars Peguet - black/silver with white face;

        c. one (1) Audemars Peguet - black/blue face;

        d. one (1) Audemars Peguet - white/red face;

        e. one (1) Audemars Peguet Ltd Edition 93/150-blue/white & red face;

        f. one (1) Royal Offshore - red/black/yellow face, Ltd Ed 724/150;

        g. one (1) Royal Oak Offshore Grand Prix - copper/black; and

    h. one (1) Royal Oak Offshore Ltd Edition Juan P. Montoya – black/blue/white; and

8) Seven (7) miscellaneous items of jewelry:

    a. one (1) silver bracelet chain;

    b. one (1) chain with ivory tusk;

    c. one (1) gold/silver color bracelet;

    d. gold/silver color necklace;

    e. cheetah print tusk;

    f. gold/black watch with diamond Cartier; and

    g. extra link.

(4) Defendant's Motion for Return of Property and to Release Lis Pendens is **GRANTED IN PART** consistent with this Order;

(5) The Government shall release the 2010 Rolls-Royce Ghost (VIN: SCA664S50AUX48905) to be returned to Defendant to satisfy his outstanding legal fees;

(6) In the event the 2010 Rolls-Royce Ghost sells for less than $104,308.73, Defendant shall notify the Court of the deficiency; and

(7) In the event the 2010 Rolls-Royce Ghost sells for more than $104,308.73, Defendant shall remit the net profit to the Government in partial satisfaction of the forfeiture money judgment Ordered herein.

    **DONE AND ORDERED** in Chambers at Miami, Florida this 22nd day of October, 2014.

                     *Joan A. Lenard*

                     **JOAN A. LENARD**
                     **UNITED STATES DISTRICT JUDGE**