IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-23148 WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PHILIP ESFORMES,

    Defendant.

_____/

## LUDENS P.A.'S MOTION TO INTERVENE AND CONSOLIDATED MOTION FOR RELEASE OF FUNDS FOR ATTORNEYS' FEES

    Comes now, interested party Ludens P.A., pursuant to Federal Rule of Civil Procedure 24, and respectfully requests that this Court enter an Order permitting Ludens P.A. to intervene in the above-referenced action. In support thereof, Ludens P.A. states as follows:

    1.    This action is a proceeding under 18 U.S.C. § 1345 (the "Civil Case") along with a parallel criminal case, *United States v. Esformes*, No. 16-CR-20549-RNS (the "Criminal Case"). In effect, this proceeding is purely an *in rem* proceeding regarding the untainted or "substitute" assets of Defendant Philip Esformes ("Mr. Esformes").

    2.    Mr. Esformes was charged in the Criminal Case on July 22, 2016.

    3.    Proposed intervenor, Ludens P.A., is a Florida corporation which voluntarily dissolved on June 15, 2018, but is acting in its recognized wind up activities under § 607.1405, Florida Statutes.

    4.    Undersigned counsel is a Florida attorney and had an attorney-client relationship with Mr. Esformes assisting in Mr. Esformes's criminal defense from approximately September

2016, when undersigned counsel began working with Mr. Esformes while at Carlton Fields Jorden Burt P.A., to September 2018.

5. In November 2016, undersigned counsel departed Carlton Fields, incorporated Ludens P.A., and continued working with Mr. Esformes in that capacity.

6. Undersigned counsel joined Jones Walker LLP as of September 1, 2017, ceasing to provide legal services through Ludens P.A., but continued to assist Mr. Esformes through September 2018.

7. In September 2018 and after discussions with Mr. Esformes, undersigned counsel relocated to South Dakota to be closer to his father, who was battling inoperable stage IV lung cancer, effectively terminating the attorney-client relationship with Mr. Esformes, who has been incarcerated since July 2016.

8. Mr. Esformes's assets have been frozen since July 2016.

9. At all relevant times, Ludens P.A.'s work for Mr. Esformes was related to Mr. Esformes's defense in the criminal action as well as this action.

10. On November 13, 2018, at the agreement of the United States and Mr. Esformes, the Court entered an order unfreezing $2.8 million of Mr. Esformes's assets for payment of legal fees. However, at the insistence of the United States, the Court's order inexplicably limited the use of the assets to payment of legal fees beginning on an arbitrary date in August 2018—more than two years after Mr. Esformes was arrested and charged. This restriction has limited Ludens P.A.'s ability to be compensated for the legal services rendered to Mr. Esformes.

11. Ludens P.A. received full payment for its services to Mr. Esformes for November 2016 and December 2016. However, along with the payment for legal services for December

2016, Ludens P.A. was informed that due to financial pressures, the individual paying for the legal services was no longer able to do so.

12. In January 2017, well after the decision in *Luis v. United States*, 136 S. Ct. 1083 (2016), Ludens P.A. reached an agreement with Mr. Esformes and the individual paying for the legal services while Mr. Esformes was incarcerated that Ludens P.A. would receive fractional installment payments to secure continued legal services with the remainder of the accounts receivable held in abeyance until such time as Mr. Esformes's substitute assets were released for legal fees. This was so that the individual paying for the legal services could ensure that lead counsel, Black, Srebnick, Kornspan & Stumpf, P.A. ("BSKS"), received the bulk payment for their services along the way.

13. Ludens P.A. continued to receive these partial payments, accruing the remainder of the legal fees as accounts receivable, through June 2016. Ludens P.A. received no payments for the legal services rendered in July 2016 and August 2016.

14. Undersigned counsel dialed back his involvement in the case as a result of non-payment of legal fees but continued to have an attorney-client relationship with Mr. Esformes through September 2018.

15. Although undersigned counsel continued to have an attorney-client relationship with Mr. Esformes through September 2018, neither undersigned counsel nor Ludens P.A. played any part in the negotiations of the stipulation that led to the release of funds here.

16. Given the extensive hearings in the criminal case on Mr. Esformes's motion to disqualify the Government prosecution team—with which undersigned counsel assisted in the initial preparation and drafting—undersigned counsel allowed defense of Mr. Esformes's criminal charge to take priority over obtaining full payment for Ludens P.A.'s legal services. Undersigned

counsel acted ethically, as he was required to do, so as to not to prejudice Mr. Esformes's case by attempting to have a tracing hearing and/or injunction hearing held in order to obtain the payment to which Ludens P.A. was due. Undersigned counsel also acted ethically, as he was required to do, by making sure as to not prejudice Mr. Esformes's case prior to sentencing by attempting to have a tracing hearing and/or injunction hearing held. Undersigned counsel has continued to sit idly by waiting to file this motion because the United States has not affirmatively stated—to undersigned counsel's knowledge—that it would not be re-trying Mr. Esformes for the charges that resulted in a hung jury.

17. However, the United States and counsel for Mr. Esformes have been aware of this claim and motion since November 13, 2018, when undersigned counsel began conferral with them regarding this motion. To the extent that the United States argues that this motion is untimely, undersigned counsel would point to his ethical duties not to in any way prejudice Mr. Esformes's criminal case.

18. Under 18 U.S.C. § 1345, "A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure."

19. Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right. That subsection provides as follows: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

20. Under Florida law and *Luis*, 136 S. Ct. 1083, Ludens P.A. has an equitable property interest in the substitute assets, which is superior to the United States's interest, which has yet to accrue as to Mr. Esformes's substitute assets. Until the restitutionary judgment is entered, the United States is still treated as an unsecured creditor, as noted herein, under *Luis*.

21. However, by imposing a restriction on the use of the funds greater than that allowed under *Luis*, the United States effectively committed a taking against Ludens P.A. For this reason, the United States has placed its own interests above that of Ludens P.A. and has not adequately represented Ludens P.A.'s interest in the substitute assets.

22. Undersigned counsel discussed this with Ms. Torres, counsel for the United States, in good faith, in November 2018. Ms. Torres simply stated that Ludens P.A. had "no legal basis" for seeking payment out of the substitute assets, and that the United States opposes this motion.

23. Mr. Esformes has taken the action necessary to protect his own interest—*i.e.*, agreeing to the August 27, 2018, restriction on the use of the released funds at the United States's insistence in order to access any of his substitute assets for his own defense—and, therefore, Mr. Esformes has not acted to adequately protect Ludens P.A.'s interest in his substitute assets.

24. Therefore, under Federal Rule of Civil Procedure 24(a)(2), with a property interest and no one adequately protecting it to this point, Ludens P.A. has a right of intervention in this action.

25. For these reasons, Ludens P.A. seeks leave of Court to intervene in this action, interplead the substitute assets, and have the Court declare that the United States's arbitrary imposition of the August 27, 2018, legal fee cutoff, which was embodied into an Order of this Court, was either a) not constitutionally permissible; or b) constituted a taking; and grant that

Ludens P.A. may be appropriately compensated for its work representing Mr. Esformes the same as his other counsel has been.

26. Undersigned counsel attempted to confer with Mr. Srebnick, counsel for Mr. Esformes, regarding this motion beginning in November 2018, including providing a draft of this motion. Initially, Mr. Srebnick stated that Ludens P.A. was without standing to intervene, only for BSKS to file its own motion to intervene on March 1, 2019. (D.E. 227.) While the Court denied that motion, that was because Black Srebnick et al. failed to address their interest such as to bring this proceeding within Rule 24 of the Federal Rules of Civil Procedure. (D.E. 230.)

27. As this action is essentially an *in rem* proceeding under 18 U.S.C. § 1345, Ludens P.A. is affirmatively making a claim for its attorneys' fees in having to intervene under 28 U.S.C. § 2465, which provides attorneys' fees to a prevailing party "in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law."

28. Further, as the restriction placed on the Mr. Esformes's funds exceeded their authority under *Luis*, the issue presented in this motion to intervene is a paramount one that is capable of repetition yet evading review—as almost all Defendants would do what Mr. Esformes did in accepting the terms offered by the Government to access his own funds. The Supreme Court of the United States's holding in *Luis* may be rendered meaningless if the United States continues to strong-arm Defendants into restrictions to which the Government is not entitled.

## ARGUMENT

29. Due to the death of Justice Scalia, the Court's opinion in *Luis* is a plurality opinion with the only majority opinion being that "a pretrial freeze of untainted assets violates a criminal defendant's Sixth Amendment right to counsel of choice." 136 S. Ct. at 1096 (Thomas, J., concurring in the judgment).

30. By agreeing that the $ 2.8 million was part of this proceeding and agreeing to release the funds, the United States implicitly conceded that there were "substitute" assets. This should end the discussion of what restrictions that the United States could place on the use of the funds for legal fees under *Luis*, particularly given that a forfeiture verdict has now been rendered and the assets that were deemed "tainted" have been identified,[1] but the United States's insistence on the arbitrary date cutoff of August 27, 2018, forced Ludens P.A. to move to intervene so that it can be compensated for its services.

31. The plurality opinion in *Luis*, in which Justice Thomas joined in the judgment, concluded by stating that "the defendant in this case has a Sixth Amendment right to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel." Justice Thomas continued to state that "The common law thus offers an administrable line: A criminal defendant's untainted assets are protected from Government interference before trial and judgment." *Luis*, 136 S. Ct. at 1101 (Thomas, J., concurring in judgment).

32. Yet, here, the United States sought to place an additional burden on the restriction beyond "reasonable" fees. By insisting on the arbitrary imposition of the August 27, 2018, cutoff, the United States has impeded Ludens P.A.'s ability to be compensated for its work, which Ludens P.A. did in good faith, acting under *Luis*. However, the plurality opinion therein makes clear why the United States's position on this motion is flawed on this point.

33. In the plurality opinion, Justice Breyer made that point that:

> If we analogize to bankruptcy law, the Government, by application of § 853(c)'s relation-back provision, became something like a secured creditor with a lien on the defendant's tainted assets superior to that of most any other party. *See* 4 Collier on Bankruptcy ¶ 506.03[1] (16th ed. 2015). For this reason, § 853(c) has operated in our cases as a significant limitation on criminal defendants' property rights in

---

[1] It is not clear to undersigned counsel whether the United States plans to drop or re-try the hung counts, but, given that the United States allowed Mr. Esformes transferred out of FDC Miami, it would appear that the United States will not pursue re-trial of the hung counts.

> such assets—even before conviction. *See Monsanto*, supra, at 613, 109 S.Ct. 2657 ("Permitting a defendant to use [tainted] assets for his private purposes that, under this [relation-back] provision, will become the property of the United States if a conviction occurs cannot be sanctioned"); *cf. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 326, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (noting that the Court had previously authorized injunctions against the further dissipation of property where, among other things, "the creditor (the Government) asserted an equitable lien on the property").
>
> Here, by contrast, the Government seeks to impose restrictions upon Luis' *un*tainted property without any showing of any equivalent governmental interest in that property. Again, if this were a bankruptcy case, the Government would be at most an unsecured creditor. Although such creditors someday might collect from a debtor's general assets, they cannot be said to have any present claim to, or interest in, the debtor's property. *See id.*, at 330, 119 S.Ct. 1961 ("[B]efore judgment ... an unsecured creditor has no rights at law or in equity in the property of his debtor"); *see also* 5 Collier on Bankruptcy ¶ 541.05[1] [b] ("[G]eneral unsecured creditor[s]" have "no specific property interest in the goods held or sold by the debtor"). The competing property interests in the tainted- and untainted-asset contexts therefore are not "exactly the same." *Post*, at 1112–1113 (Kagan, J., dissenting). At least regarding her untainted assets, Luis can at this point reasonably claim that the property is still "mine," free and clear.

*Luis*, 136 S. Ct. at 1092.

34. Under what was actually a majority opinion in *Luis*, the United States could not place any restriction upon Mr. Esformes use of his substitute assets for attorneys' fees to his criminal defense attorneys prior to a restitutionary judgment—only the Court could do that. *Compare* 136 S. Ct. at 1111–12 (Kennedy, J., dissenting) ("In the plurality's view, the reason Luis can use the restrained funds for an attorney is because they are still hers. But if that is so, then she should be able to use all $2 million of her remaining assets to pay for a lawyer. The plurality's willingness to curtail the very right it recognizes reflects the need to preserve substitute assets from further dissipation.") *with* 136 S. Ct. at 1095–96 (plurality) ("We concede, as Justice Kennedy points out, *post*, at 1108–10, that money is fungible; and sometimes it will be difficult to say whether a particular bank account contains tainted or untainted funds. But the law has tracing rules that help courts implement the kind of distinction we require in this case. . . . Courts use

8

tracing rules in cases involving fraud, pension rights, bankruptcy, trusts, etc.  They consequently have experience separating tainted assets from untainted assets, just as they have experience determining how much money is needed to cover the costs of a lawyer.").

35. By insisting on the arbitrary cutoff for the fees more than two years into the case, the United States attempted to assert property rights that it was conceding that it did not have by agreeing to release funds in the first place.

36. In *Luis*, a majority of the Court agreed on the point that the United States is limited as to what it can do in regards to substitute assets prior to conviction, particularly with regards to attorneys' fees.  "As the plurality notes, *ante*, at 1094, for *in personam* criminal forfeitures like that at issue here, **any interference with a defendant's property traditionally required a conviction**. . . . . At most, a court could unwind prejudgment fraudulent transfers after conviction." 136 S. Ct. at 1099.

37. In discussions with Ms. Torres, Ms. Torres indicated to undersigned counsel that the United States viewed this as a private dispute between Mr. Esformes and Ludens P.A.  This could not be further from the truth.  It is only because the United States has insisted on a restriction to which it is not entitled that Ludens P.A. found itself at this juncture.

38. Again, the United States already agreed to the release of the funds for legal fees. This is crucial because the United States could not continue to assert property rights in those funds such as to prohibit Mr. Esformes for paying legal fees where the United States was simultaneously conceding that the funds were substitute assets.  And, now that a forfeiture verdict was already rendered, any property not directly forfeitable in the Criminal Case is by definition substitute assets that are still substitute assets in the sense described by Justice Breyer in *Luis* until the United States

becomes a secured creditor through a restitutionary judgment or until such time as Esformes would be re-tried and a further forfeiture judgment reached.

39. As a result, Ludens P.A. has, in effect, suffered a taking at the hands of the United States.

40. Under Florida law and *Luis*, it is helpful to consider the Florida law regarding a charging lien. This is important because it shows Ludens P.A.'s equitable interest in the substitute assets that gives rise to the right of intervention under Rule 24(a).

41. Ludens P.A. could arguably be entitled to a charging lien against substitute assets of Mr. Esformes even though the United States prevailed in obtaining a conviction and a forfeiture verdict in the Criminal Case. *See, e.g. Rebecca J. Cocey, P.A. v. American Import Car Sales*, 944 So. 2d 1202, 1205 (Fla. 4th DCA 2006) ("The attorney fee lien has priority over judgments obtained against the client subsequent to the commencement of the attorney's services. It is only inferior to judgments entered prior to the commencement of the services.") (quoting *Miles v. Katz*, 405 So. 2d 750 (Fla. 4th DCA 1981). This is because the United States was seeking forfeiture of essentially all of Mr. Esformes property, and the jury finding that the property was not directly forfeitable made it a substitute asset, which is still governed by *Luis* up until a restitutionary and/or forfeiture judgment is entered. In a sense, by avoiding conviction on those counts, Mr. Esformes *prevailed* in having the jury determine that the assets were substitute and not directly forfeitable, bringing the substitute assets back inside the Civil Case, where this Motion is brought.

42. Under Florida's charging lien doctrine, an attorney is seen to have an equitable interest in the proceeds of the case which he is representing his client in that is inferior only to judgments entered prior to the commencement of the services. *Cocey*, 944 So. 2d at 1205. Thus,

to the extent that Ludens P.A. helped in keeping assets substitute assets, it may have an equitable lien on those assets to this point.

43.As a result of the United States unduly interfering in the interest that Ludens P.A. has in the substitute assets of Mr. Esformes, Ludens P.A. must intervene in this action to protect its interests. To the extent that the United States has caused Ludens P.A. to incur costs and fees to protect its interests, Ludens P.A. may be entitled to a reasonable fee for having to bring this motion and any corresponding actions should Ludens P.A. prevail, pursuant to 28 U.S.C. § 2465.

### **MOTION FOR RELEASE OF FUNDS TO PAY ATTORNEYS' FEES**

44.Federal Rule of Civil Procedure 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Here, intervention is sought to entitle Ludens P.A. to the release of Mr. Esformes's substitute assets to pay for Mr. Esformes's attorneys' fees incurred in defending the Criminal Case.

45.Ludens P.A. joins in and adopts Mr. Esformes's briefing on his Motion to Modify Preliminary Injunction to Release Funds for Legal Fees and Expenses Through Trial (D.E. 224), his reply in support of the same (D.E. 226), and Mr. Esformes's Motion for Release of Funds to Pay Legal Invoices Through Appeal (D.E. 250).

46.Ludens P.A. attempted to confer with the United States regarding the hourly rate agreed to between Mr. Esformes and itself ($200) and its reasonableness on November 13, 2018, and the United States took no position on the rate given that it was opposing this motion in its entirety.

47.Ludens P.A. has attempted to confer with counsel for Mr. Esformes regarding the reasonableness of the hourly rate, beginning in November 2018, and counsel has never been provided a position on the same.

11

48.     Ludens P.A. is agreeable to the same *ex parte* review of its invoices by the Court in determining that the time incurred was reasonable that BSKS and Tache Bronis have agreed to.

## CONCLUSION

Ludens P.A. respectfully requests that the Court enter an Order allowing it to intervene under Rule 24(a), allowing Ludens P.A. to seek the release of Mr. Esformes's substitute assets to secure payment for the legal fees incurred in defending Mr. Esformes prior to August 2018.

## REQUEST FOR TELEPHONIC APPEARANCE FOR ANY HEARINGS

As noted herein, undersigned counsel relocated from South Florida to South Dakota in September 2018 to be nearer his dying father. Undersigned counsel has continued to remain in South Dakota since his father's passing, and undersigned counsel would respectfully request that he be permitted to appear by telephone for any hearings related to this Motion to Intervene or Motion for Release of Funds for Attorneys' Fees, rather than incurring unnecessary travel costs.

## Certificate of Conferral

Pursuant to Federal Rule of Civil Procedure 7.1(a)(3), undersigned counsel discussed this motion with counsel for the United States via email and telephone in November 2018. The United States opposes the relief sought herein, stating that there is no legal basis for intervention. Undersigned counsel also conferred with Mr. Srebnick, counsel for Mr. Esformes regarding this motion in November 2018, March 2019, and November 2019 by both email and telephone (November 2018). Mr. Srebnick has never articulated Mr. Esformes's position on this motion outside of not seeing standing prior to filing BSKS's own motion to intervene.

Dated: November 20, 2019

/s/ Zachary D. Ludens
Zachary D. Ludens (FBN 111620)
4625 Vista Hills Dr.
Rapid City, SD  57702
T: 605.929.8317
F: 605.342.5185
Zach@ZachLudens.com
*Counsel for Ludens P.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF portal on November 20, 2019.

/s/ Zachary D. Ludens